UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Teleplus Consulting, Inc.,

Plaintiff,

v.

Conseco Services, LLC,

Defendant.

Civil File No. 02-CV-212 (JNE/JGL)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Teleplus Consulting hereby submits this Memorandum in Support of its Motion to Compel Discovery in the above-captioned proceeding.

## BACKGROUND

Plaintiff presented a series of discovery requests to Conseco, including several requests for production of documents regarding (1) email sent or received by Conseco related to this matter, and (2) Conseco's email system in general. *See*, Requests for Production 1 through 6 (attached hereto as Exhibit 1 to Affidavit of Christopher K. Sandberg)[1] While Conseco

[1] Request for Production No. 1. Produce for inspection and copying a map of Defendant's computer network, during the Discovery Period, including without limitation all location(s) on the network where e-mail may be stored in original, redundant, backup, archival, or duplicate form, and the location of all file servers and e-mail servers.

Request for Production No. 2. Produce for inspection and copying an inventory of all computing devices in use by Defendant during the Discovery Period.

Request for Production No. 3. Produce complete and accurate copies, in electronic form (on ZIP disks or CD-Rs) of all of Defendant's e-mail database(s) for the Discovery Period.

Request for Production No. 4. Produce complete and accurate copies, in electronic form (on ZIP disks or CD-Rs) of all of e-mail messages and attachments sent or received by Defendant during the Discovery Period discussing or in other manner related to Plaintiff.

represented to Plaintiff that it would respond to Request No. 4 - copies of emails in electronic form - all Conseco has done to date is to provide emails from one or two employees' e-mailboxes, in printed form. Conseco has declined to respond to the other Requests on the grounds that they were overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. *See*, Exhibit 2 to Sandberg Affidavit.

Defendant's inadequate response to Plaintiff's document requests was revealed only after (1) the late supplementation of Defendant's responses and (2) the completion of third party depositions which disclosed that additional e-mail communications took place – for which Defendants produced no documentation. Based upon the depositions of those third party witnesses, Plaintiff is faced with the realization that Conseco has evaded the intent of Plaintiff's discovery, and most likely either hidden or destroyed relevant materials. Plaintiff bases its conclusion on the additional materials which were first provided by Conseco after depositions were completed and the testimony of third-party witnesses; both of these sources reveal that Conseco has failed to produce materials which do or did exist and which would be responsive to Plaintiff's discovery requests and would be highly important to proving Plaintiff's case.

Plaintiff now requests that the Court (1) order Conseco to fully respond to Plaintiff's Requests, (2) produce the appropriate personnel for deposition to explain the operation of Conseco's email system and to explain the inconsistencies between Conseco's production and

---

Request for Production No. 5. Produce for inspection and copying, testing and sampling, at your premises, on February 18, 2002, starting at 9:00 a.m., all computing devices which store, host, route, archive, or backup any e-mail sent or received by you during the Discovery Period.

Request for Production No. 6. Produce for inspection and copying, testing and sampling, at your premises, on February 18, 2002, starting at 9:00 a.m, all computing devices used by the individuals identified in response to Interrogatory No. 14

the third-party deposition testimony, (3) order Conseco to bear the costs of pursuing the additional discovery, and (4) permit Plaintiff to depose two former Conseco employees.

## FACTS

On August 28 and November 26, 2002, Plaintiff deposed James Breakey in connection with his employment by Defendant and his involvement in the carrier negotiations for which Plaintiff was retained as a consultant by Defendant. At the time of his deposition, Mr. Breakey was an employee of Defendant's affiliate, Conseco Finance Corporation, and had been involved in various stages of the negotiations with the telecommunications carriers. Plaintiff also propounded written discovery to Defendant, seeking (among other things) all communications discussing or in other manner related to Plaintiff.

Despite the fact that Plaintiff's document requests had clearly required responsive materials to be provided in electronic form (as in Requests for Production 3 and 4), Defendants produced only a sheaf of printouts which appear to be from one or two employees' email accounts. Defendant objected to the document production on the grounds that overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence.

Subsequent to those depositions of Conseco employees, Plaintiff took the depositions of several employees of the telecommunications carriers with which the service negotiations had taken place. The testimony of those third-party deponents demonstrated the true scope of involvement of Conseco management and the sorts of communications that had gone on between Conseco and the carriers. In total, six different Conseco employees were involved in the carrier negotiations for which Plaintiff was engage: Erv Willey, James Breakey, Mike Sanderson, Richard Maybin, Gary Brown, and Kevin Wirthwein (Deposition of John Quinlivan at 32-40; 50-52; 77-78 – cited pages attached as Exhibit 3 to Sandberg Affidavit); James Breakey, Mike

Sanderson, Irv Willey, Kevin Wirthwein, and Richard Maybin (Deposition of Richard Breakey, Vol 2 at 105-122, Vol 2 at 5; 44-48 – cited pages attached as Exhibit 4 to Sandberg Affidavit)); James Breakey and Mike Sanderson (Deposition of Mike Smith at 61-64 – cited pages attached as Exhibit 5 to Sandberg Affidavit)); Mike Sanderson (Deposition of Lisa Tobin at 118-119 – cited pages attached as Exhibit 6 to Sandberg Affidavit.)

On February 26, 2004, 2004, Defendant suddenly produced additional documents from the "Corporate Legal Files of AT&T Maintained by Kathy Keifer", with a cover letter stating that these were "additional documents from Conseco." *See*, Exhibit 7 to Sandberg Affidavit. Among the key revelations from those materials were that on numerous occasions, Maybin had substantive communications be email with AT&T and Conseco's counsel regarding the terms of the final documents prepared to implement the service arrangements obtained for Conseco by Teleplus, and that there were ongoing communications between AT&T and Conseco. *See*, Exhibit 8 to Sandberg Affifdavit at stamped pages numbers 302212 - 218.

Plaintiff requested in April 2004 that Defendant answer completely the outstanding discovery on electronic data and agree to depositions of Mesrrs. Maybin and Sanderson. *See*, Exhibit 9 to Sandberg Affifdavit. Conseco refused on the grounds that time had passed on discovery and that the two individuals were no longer Conseco employees.

**ARGUMENT**

Electronic e-mail data and specifically deleted email data is discoverable. Not only does a responding party have a duty to supplement discovery responses, but incomplete or incorrect responses are considered the same as failing to respond. If Defendants contend that such email information has been deleted, then Defendants must demonstrate that a good faith search of their

backup electronic data systems was completed and that such email communications are no longer retrievable from any source.

On the other hand, if - as Plaintiff now believes - no good faith search of archival backups occurred or was inadequate, the responding party must produce backup electronic e-mail data where such material is relevant to the allegations claimed.

**1. The General Discovery Rules Require that a Responding Party has an Ongoing Duty to Supplement Discovery Requests.**

**A. Supplementation of Disclosures and Responses.**

The Local Rules impose a clear obligation on parties to supplement their initial discovery responses under specific circumstances:

> " A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
>
> > (1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respects the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . .
> >
> > (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Local Rule 26(e).

**B. Evasive or incomplete disclosure, answer or response is the same as failing to disclose, answer or respond.**

Incomplete responses to discovery requests are also dealt with under the Local Rules:

> “ A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery as follows:
>
> (2) (A) If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.
>
> (B) If a deponent fails to answer a question propounded or submitted under Rule 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. . . .
>
> (3) Evasive or Incomplete Disclosure, Answer or Response.
>
> “ For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer or respond.”

Local Rule 37(a).

With the production now of additional materials and the advent of third party testimony declaring that e-mails occurred between the Defendants and themselves, Defendant’s prior submissions must be deemed incomplete and inadequate. Since there was no viable means for Plaintiff to know prior to the third party testimony that Defendant’s production was lacking, Plaintiff cannot be seen to have inadvertently waived its right to object to Defendant’s incomplete submissions at an earlier time.

In this case, even though the initially-set period for discovery had ended, Defendant retains an ongoing duty to amend and or correct prior submissions that are clearly incomplete.

**2. Discovery Broadly Includes Electronic Data in Various Forms Including Archival Backup Systems.**

The United States Supreme Court recently reaffirmed that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002). "Relevancy is broadly construed at the discovery state of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

The broad scope of discovery as outlined by the Federal Rules of Civil Procedure has further been interpreted to include deleted computer files, whether they be e-mails or otherwise. *See Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002); *Rowe Entertainment, Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421, 427, 431 (S.D. N.Y. 2002) (stating "[e]lectronic documents are no less subject to disclosure than paper records"); *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000) (stating computer records including deleted computer records are discoverable documents under Fed. R. Civ. P. 34).

Moreover, during discovery, "the producing party has an obligation to search available electronic systems for information demanded, and ordering a limited back-up restoration of e-mails." *Antioch*, 205 F..D. at 652 (citing *McPeek v. Ashcroft*, 202 F.R.D. 31, 31, 34 (D.D.C. 2001)). "The disclosing party shall take reasonable steps to ensure that it discloses any back-up copies of files or archival tapes that will provide information about any 'deleted' electronic data." *Id. (*quoting *Kleiner v. Burns,* 2000 WL 1909470 (D. Kan. Dec. 15, 2000)). As long as the material sought is relevant to Plaintiff's claims, Plaintiff is entitled to discovery of the requested

e-mails. *See Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) (referring back to Fed. R. Civ. P. 26(b)(1)).

**3. <u>Information Obtained During Depositions Does Not Trump a Duty to Produce Documents</u>.**

Even if a party obtains information during depositions, such discovery does not trump a responding party's duty to produce documents as "[a] document may carry more weight or information than the testimony." *Pulsecard, Inc. v. Discovery Card Service*, 168 F.R.D. 295, 306 (D. Kan. 1996).

In the present matter, Defendant's own supplemental production and third party testimony have now demonstrated that other e-mail correspondence existed. In a similar fact situation, the court from the Southern District of New York in *Zubulake v. UBS Warburg, LLC,* 217 F.R.D. 309 (S.D.N.Y. 2003) (employee gender discrimination action), determined that the plaintiff was entitled to discovery of relevant e-mails that had been deleted and resided only on backup disks. *See id.* A former employee claiming gender discrimination sought a motion to compel defendants' production of computer backup files containing relevant e-mail communications. Defendants produced approximately 100 pages of e-mails, but the employee-plaintiff produced over 450 pages of relevant e-mails and clearly demonstrated that defendants had not conducted and adequate search of their various electronic backup systems. *Id.* at 312-14.

In *Zubulake*, the plaintiff had documentation that clearly demonstrated the incompleteness of defendants' productions. The period in question covered the three years from 1999 to 2001, it was a narrow interval of time and related solely to e-mail communications. Additionally, the defendants' backup systems created indexes of each backup tape which made it easy to determine exactly which backup tapes were relevant. *Id.* at 314. Apparently, the defendants had every e-mail sent or received by registered traders (except internal e-mails)

during the period of Zubulake's employment, even if the e-mail was deleted instantaneously on a particular trader's system - it was still available for discovery. *Id.* at 315.

Without knowing exactly how or to what extent Defendants' backup systems are configured it is impossible to speculate as to whether deleted e-mails would be retrievable or not. The burden of production, however, rests with Defendants – hence, it is Defendants' burden to demonstrate that the production of the e-mails referenced within third party depositions are or are not presently retrievable from backup electronic data storage systems. *See Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) (stating the responding party is required to take reasonable steps to ensure that it discloses any backup copies of archival tapes that will provide information about any 'deleted' electronic data) (internal citations omitted).

**4. Good Cause Exists for the Court to Order Compliance with Plaintiff's Discovery at this Juncture.**

While Defendant has attempted to obscure the scope of its personnel involved in the carrier negotiations, third parties have identified up to six different Conseco employees with involvement in the carrier negotiations. Despite this, the email printouts which Conseco has provided in discovery have been limited to those of one or two employees.

The third party witnesses have noted instances of electronic communications with Conseco employees, but no such electronic records have been produced by Conseco. This raises the obvious question of what happened to those records. Defendant has refused to permit Plaintiff access to its computer records to determine if there are retained copies of those "missing" records, and Defendant has not certified that it has performed a reliable search of its computer systems (including appropriate backup systems) to prove that no trace of those "missing" records exists.

In addition, the sudden emergence of additional records from Defendants' files, with no explanation as to why these materials were not located during the good faith search of Defendant's records in response to Plaintiff's discovery, squarely raises the question of the effectiveness and reliability of the supposed search of electronic records conducted by Defendant.

To be clear, Plaintiff now has no confidence that **<u>any</u>** search of Defendant's electronic records was ever performed. If there had been a search of Defendant's email system and related electronic records at the time the discovery was initially propounded, it is inconceivable that the emails referred to by the third party witnesses would not have been located. The subject matter of the requested documents could hardly have been more clear: "Request for Production No. 4. Produce complete and accurate copies, in electronic form (on ZIP disks or CD-Rs) of all of e-mail messages and attachments sent or received by Defendant during the Discovery Period **<u>discussing or in other manner related to Plaintiff</u>**." (Emphasis added.)

Given Defendant's objections to the discovery requests relating to electronic records, Plaintiff believes that no search of Defendant's electronic records has ever been made, and that it is now essential to do so. The conflicting testimony regarding what information was created, sent, or received by the six Conseco employees shows the need for a thorough search of archive and backup systems to at least attempt to retrieve those "missing" materials.

This is not a minor point. Defendant has objected to paying Plaintiff as called for in the parties' contract, and that decision appears to have been made by senior management person for telecommunications procurement. In addition, Conseco has suggested that there were differences of opinion between Conseco management and Plaintiff as to negotiations strategy; all the communications initiated or responded to regarding that strategy is essential to see where in Conseco this "change of heart" really originated. To give that search a reasonable chance of

success, Conseco should be ordered to produce for deposition those employees with knowledge of its electronic messaging, storage, and backup systems to enable Teleplus to frame precise requests for electronic data and to secure the relevant information.

**5. <u>Depositions Should Be Ordered for Two Former Employees</u>.**

Teleplus has requested that Conseco produce two individuals - Messrs. Maybin and Sanderson - who have now been identified as having significant involvement in the negotiations with carriers both prior to and after Plaintiff's dismissal by Conseco. Plaintiff initially did not schedule a deposition of these individuals, given the description by Mr. Breakey of their scope of involvement. It now appears these individuals had significantly more involvement and communications that Plaintiff was lead to believe. Quite separate from the electronic discovery addressed above, it is appropriate for the Court to permit Plaintiff to determine what Defendant's beliefs and actions were at the time of Plaintiff's work by asking those two individuals.

Teleplus expects that most of the information it will seek from Mesrrs. Maybin and Sanderson will be within the scope of the Protective Order issued in this matter, since the information will relate to the negotiations with Conseco's carriers. It is also possible that the two individuals were positions of access to generally confidential information during their tenure at Conseco. To remove any possible issues related to the examination of these two former employees, Teleplus requests that the Court issue subpoenas to Mesrrs. Maybin and Sanderson directing them to appear for depositions subject to the Protective Order.

**6. <u>Conseco Should Be Directed To Bear the Costs of Production of Requested Materials</u>.**

The presumption, under current discovery rules, is that the responding party must bear the expense of complying with discovery requests, subject to the court's discretion under Rule 26(c). *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). Where discovery sought involves

electronic data available only from expensive-to-restore backup media, courts have looked to balancing tests to consider whether to shift the cost of production to the requesting party instead of the responding party. *See Zubulake*, 217 F.R.D. at 316, 322-23 (modifying *Rowe's* 8 factor balancing test and applying a modified 7 factor balancing test).

Initially, in relation to electronic data and the cost-shifting analysis, the central test courts have utilized is the eight-factor test articulated in *Rowe,* which include the following:

(1) the specificity of the discovery requests;
(2) the likelihood of discovering critical information;
(3) the availability of such information from other sources;
(4) the purposes for which the responding party maintains the requested data;
(5) the relative benefits to the parties of obtaining the information;
(6) the total cost associated with production;
(7) the relative ability of each party to control costs; and
(8) the resources available to each party.

*Rowe Entertainment*, 205 F.R.D. at 429.

More recently, however, the court in *Zubulake*, modified the eight-factor *Rowe* test by placing greater emphasis on the importance of the evidence sought compared to the cost of production. The court in *Zubulake*, declared that the *Rowe* factors were often interpreted to mean that the cost of production more than likely was shifted to the requesting party and away from the responding party. *Zubulake*, 217 F.R.D. at 320. In view of this trend, the *Zubulake* court determined that "[i]n order to maintain the presumption that the responding party pays, the cost-shifting analysis must be neutral [and] close calls should be resolved in favor of [this] presumption." *Id.*

The *Zubulake* court further found that the *Rowe* test was incomplete and modified its factors, cautioning that each factor should not be weighed equally. *Id.* at 322. When evaluating a multi-factor cost-shifting test, "the central question must be, does the request impose an 'undue

burden or expense' on the responding party? Put another way, 'how important is the sought-after evidence in comparison to the cost of production?'" *Id.* at 322-23. The new seven-factor test as modified by *Zubulake* includes the following:

(1) the extent to which the request is specifically tailored to discover relevant information;

(2) the availability of such information from other sources;

(3) the total cost of production, compared to the amount in controversy;

(4) the total cost of production, compared to the resources available to each party;

(5) the relative ability of each party to control costs and its incentive to do so;

(6) the importance of the issues at sake in the litigation; and

(7) the relative benefits to the parties of obtaining the information.

*Id.*

In demonstrating the more neutral nature of the modified factors, the *Zubulake* Court broke out the seven cost-shifting balancing factors into roughly four groupings. The first two factors (1-2 above), according to *Zubulake*, comprise the 'marginal utility test' *i.e.*, the more likely it is that backup data contains information relevant to a claim or defense, the fairer it is that the responding party search at its own expense. *Id*. at 323 (citing *McPeek v. Ashcroft*, 202 F.R.D. at 34). Therefore, the less likely it is that the evidence is relevant, the more unjust it would be to make the responding party foot the bill for searching for less relevant evidence. *Id.*

*Zubulake* determined that the second group of factors (3-5 above) comprised cost issues relating to how expensive is the production and who can handle the expense. The third group (6 above), concerned the importance of the litigation itself; and the finally factor 7 above – relative benefits – was determined to be the least important factor stating it was fair to presume that the

response to any discovery requests generally benefits the requesting party. *Id.* Interestingly, the *Zubulake* court determined if the production also provides a tangible or strategic benefit to the responding party, that fact may weigh against shifting costs to the requestor. *Id.*

Moreover, in criticism of *Rowe*, the *Zubulake* court found that the "suggestion that a plaintiff must not only demonstrate that probative evidence exist, but also prove that electronic discovery will yield a 'gold mine,' is contrary to the plain language of Rule 26(b)(1), which permits discovery of 'any matter,' that is 'relevant to [a] claim or defense.'" *Id.* at 323.

After the *Zubulake* court weighed each of the above seven factors, and since it was possible to determine exactly which backup tapes were relevant to documents requested, the court ordered defendants to produce all responsive e-mails that existed on its optical disks or on its active servers at defendants' expense. [2]

Here, Conseco should be ordered to produce the appropriate backups and other materials - at its own expense - so that Plaintiff can finally ascertain what communications took place between and among the personnel involved in working on the contract negotiations for which Teleplus was engaged.

**CONCLUSION**

In light of current case law, even though the e-mail correspondence sought in the present dispute may not be currently available on Defendant's electronic systems, Defendant continues to retain a duty to search backup files and systems for relevant evidence. Plaintiff has made a

[2] During that production, it was determined that a number of emails on the backup tales were missing from defendant's active files, confirming plaintiff's suspicion that relevant emails were being deleted or lost. 216 F.R.D. at 287. The *Zubalake* Court ordered defendant to pay for the re-deposition of several of defendant's employees so plaintiff could inquire about the newly-restored emails. *Zubalake IV*, 220 F.R.D. at 222. Most recently, the *Zubalake* Court ruled that relevant emails had been lost in their entirety, despite instructions from counsel to preserve copies of active computer files, and imposed significant sanctions. *Zubalake V*, ___ F.R.D. ___ (July 20, 2004)

certifiable effort to obtain the relevant e-mails prior to bringing this motion to compel. *See*, Letter from Christopher K. Sandberg to Robert Cattanach dated June 3, 2004, attached as Exhibit 10 to Sandberg Aff. Defendant has refused to demonstrate the adequacy of its prior efforts to search backup systems in fulfilling their discovery obligations, Plaintiffs have no recourse except to bring this motion to compel the production of electronic backup systems held by Defendants.

Defendants has refused to provide electronic access as Teleplus requested, and has only provided limited paper records. Defendant must be held accountable and demonstrate it has conducted a good faith search of all the various backup systems and clearly demonstrate that further relevant e-mail communications are no longer available. If such a search has not been adequate, then Plaintiff is entitled to obtain the production of relevant backup and or archival e-mail correspondence.

Given the importance of the evidence sought, if Defendant's backup systems can be readily accessed and a narrow sampling of relevant materials can be produced, it would seen reasonable under the cost-shifting balancing test as modified by *Zubulake*, that Defendant should bear the cost of production and produce the e-mail communications at issue.

Once the requested electronic materials have been provided to Plaintiff, it is necessary for Plaintiff to depose Messrs. Maybin and Sanderson to review, explain, and elaborate on the written statements they made while Plaintiff was under contract with Defendant, and the Court should so order.

DATED: October 21, 2004.

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By s/ Christopher K. Sandberg

Christopher K. Sandberg (95485)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Telecopier: (612) 339-0981

COUNSEL FOR PLAINTIFF
TELEPLUS CONSULTING, INC.