**Certified Copy**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TELEPLUS CONSULTING, INC.,

Plaintiff,

vs. Civil Action No. 02-CV-212

CONSECO SERVICES, LLC,

Defendant.

TELEPHONE DEPOSITION

of MIKE SMITH

Taken at the offices of
MCI WorldCom
5000 Britton Road
Hilliard, Ohio 43026

on June 19, 2002, at 2:05 p.m.

Reported by: Angela R. Starbuck, RPR

-=0=-

forward to Mike to share with him my view, that there was no benefit in changing from corporate accounts to major nationals, and the fact that I felt they were better off as a customer staying in our channel, that I was accurately portraying the situation.

Q. Okay.

A. And -- and Mr. Muller explained to me that -- that the deal that we had on the table was the best deal that this customer was going to be offered considering the circumstances, regardless of channel.

Q. So we have, if we can use this snapshot in time of May, 2001, some specific proposals in terms of terms and conditions and rates that apparently were at least being previewed by somebody on behalf of WorldCom to the consultant. You using that as a benchmark, what's your best recollection, Mr. Smith, as to what happened after that?

A. After what?

Q. All right. There's -- there's a proposal made -- let me -- let me step back

here. Let's go back and look at Exhibit 111, all right?

A. Okay.

Q. That's a proposal made from WorldCom, via Mark Young, to Teleplus, right?

A. Yes.

Q. And that's -- that's got, basically halfway through that first page of the March 12th letter, a proposed contract terms and conditions revisions by WorldCom, which has four numbered points, right?

A. Yes.

Q. All right. Then what we appear to have is -- if you look at Exhibit 110 -- in April of 2001, a letter from Mr. Breakey to Mr. Corrica saying, we want a new team, right?

A. Yes.

Q. And then if we look at Exhibit 112, at least Teleplus is reporting some inside information about what WorldCom's going to do by way of an offer, right --

A. Yes.

Q. -- in May of 2001?

But if -- if you accept as correct what Mr. Hanson has written here, Mr. Quinlivan hasn't yet gained control of the account?

A. I don't believe he had at the time, no.

Q. So this is the stage that was set, and my question to you now is, Mr. Smith, what -- at some point in time, did Mr. Quinlivan gain control of the account?

A. Well, yes, there was a -- there was a rather disturbing meeting in Minneapolis that I attended. I felt so strongly about -- about the fact that I believed that Conseco should stay in the corporate accounts channel, that there was no -- no benefit in moving -- in fact, I felt it would be to the detriment to our ability as a company to support the customer, would Mike be willing to let me come to Minneapolis and share my views in person, and he agreed to set up the meeting, I think perhaps a bit reluctantly, but did agree

because I was persistent.

And we -- so we did schedule the meeting, and when I got to Minneapolis, I had with me a service manager that works for me in Minneapolis that I was going to engage on the account as necessary to provide the right level of support. I also had our business development representative, who was the individual who was responsible for helping us put together the deal, and may have had another attendee, I don't recall. But I do recall those two individuals for sure.

And when we got to Conseco -- oh, I'm sorry, John Quinlivan was in attendance at my request. And when we got to Conseco, in addition to Mike Sanderson, the consultant was represented -- as I recall, there were two individuals, and I don't recall who exactly they were, but there were two individuals representing the consultant. And I don't recall if there were others from Conseco in the room other than Mike Sanderson.