**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Court File No. 02-CV-212 (JNE/JGL)

Teleplus Consulting, Inc.,

Plaintiff,

v.

Conseco Services, LLC,

Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXPERT AND OTHER TESTIMONY**

Plaintiff Teleplus Consulting, Inc. ("Teleplus") submits this Memorandum of Law in Support of its Motion in Limine to Exclude Expert and Other Testimony pursuant to Local Rule 39.1.

## INTRODUCTION

Defendant Conseco Services, LLC's ("Conseco"), expert witness, Timothy J. Nantell is expected to testify at trial regarding damages allegedly sustained by Conseco due to Teleplus' alleged inability to secure re-negotiated telecommunications carriers contracts for Conseco in a "timely" fashion. Mr. Nantell appears to have removed any distinction between a contract delay and a delay due to negligent misrepresentation and bases his entire damage analysis on two identical elements.

Mr. Nantell's opinion testimony is based squarely on facts that are neither part of any contract between the parties nor supported by the record. Mr. Nantell's analysis relates solely to damages supposedly caused by an unsubstantiated delay in obtaining the

re-negotiated telecommunications carriers contracts and forms the sole basis for alleged damages allegedly sustained by Conseco.

The testimony of Mr. Nantell is not based on any first hand knowledge, as Mr. Nantell took no part in the negotiations process. Inclusion of any testimony and/or analysis by Mr. Nantell formulated upon speculation rather than on substantial facts will only work to confuse the jury and muddy an otherwise straightforward and uncomplicated breach of contract dispute. Since Mr. Nantell's testimony and opinion lack any substantial basis in fact sufficient to support the damages analysis contained within his expert report, his testimony is irrelevant and prejudicial, and should be excluded pursuant to Fed. R. Evid. 402, 403, and 702.

To the extent that Conseco should seek to have any other witness(es) testify to the same alleged "delay" damage, Teleplus requests that such testimony also be excluded.

## RELEVANT FACTS

Plaintiff Teleplus provides consulting services to business consumers of telecommunications services from common carriers. Defendant Conseco and its corporate affiliates provide a variety of insurance and financial services to its customers and contracts with various telecommunications carriers.

Prior to February 2001, Conseco had entered into a number of contracts for telecommunication services with AT&T, WorldCom/MCI, and Verizon. In an effort to solicit consulting business, William Hansen, an independent sales consultant working with Teleplus, offered to review and evaluate Conseco's existing telecommunications

carriers contracts and determine whether Conseco's contracts were beneficial in light of the current market rates available for customers of similar size.

Mr. Hansen suggested a meeting with Conseco to discuss the services Teleplus could offer, a meeting was held, and Mr. Hansen followed up that meeting with an informal e-mail dated February 1, 2001, meant only to nudge the contract process between Teleplus and Conseco along.[1]

Nearly two weeks later, on February 12, 2001, Teleplus and Conseco entered into a valid and binding contract entitled "Consulting Services Agreement," ("Agreement") wherein Teleplus committed to review Conseco's existing contracts for telecommunications services, to review current carrier pricing options, and to make recommendations to Conseco on those available pricing options.[2]

Under the terms of the Agreement, Conseco agreed to pay Teleplus for its work if Conseco entered into a carrier pricing option recommended by Teleplus, or initiated service from any carrier within twelve months under pricing or other terms substantially similar to the options recommended by Teleplus.

On February 15, 2001 Mr. Hansen sent Conseco an e-mail setting out a tentative but aggressive strategy outlining pending tasks.[3] Teleplus investigated and analyzed

---

[1] Christopher K. Sandberg Declaration, dated June 20, 2005, at Ex. A (hereinafter Sandberg Decl. at Ex. A) ( Hansen Depo. Ex. 202, Hansen e-mail to Sanderson, dated 02/01/01).

[2] Sanberg Decl. at Ex N (Hansen Depos Ex. 204, Agreement between Teleplus and Conseco).

[3] Sandberg Decl. at Ex. B (Hansen e-mail to Sanderson & Rosenbaum, outlining strategy, dated 02/15/01) (T0010).

Conseco's existing contracts and current telecommunications usage and billing. Teleplus determined that Conseco's existing carrier contracts were not favorable, were not suited to Conseco's present and future business operations, and further determined that Conseco was in a serious shortfall penalty situation wherein Conseco was obligated under its existing contracts to pay steep penalties because it fell below the minimum usage that it had previous contracted (a "short-fall" situation with AT&T of approximately $6 million).[4]

Teleplus determined that the extent of Conseco's shortfall would make any negotiation process more difficult. The weakness of Conseco's bargaining position was confirmed by AT&T's executive, Laura Carlisle (a member of the AT&T/Conseco negotiations team), who testified during her deposition that due to Conseco's short-fall situation, AT&T had strong leverage, leaving Conseco with a very weak bargaining position.[5]

Nonetheless, Teleplus reviewed the array of carrier service offerings that could be of value to Conseco, prepared business down turn letters to carriers in an effort to mitigate the shortfall penalty as a negotiation lever, and brought to Conseco its recommendations from those offerings. Conseco and Teleplus agreed on how to approach AT&T seeking contract revisions, and Teleplus entered into negotiations with

---

[4] According to Laura Carlisle (Acting Sales Center Vice President of AT&T and participant in Conseco's re-negotiations), Conseco's short-fall as of March 2001 was estimated at approximately $6 Million. See Sandberg Decl. at Ex. C (Carlisle Depo. Vol. I, dated 05/29/02, at T. 7 & 14).
[5] *See id.* (Carlisle Depo, at T. 15-16).

AT&T. Favorable results obtained by Teleplus relating to specifically the AT&T contract included:

- On March 23, 2001 Teleplus obtained AT&T's agreement to waive Conseco's existing shortfall liability;[6] confirmed in an April 3, 2001 e-mail from AT&T to Conseco agreeing to waive shortfall;[7]

- On April 23, 2001 Teleplus obtained optimum price points from AT&T with net prices of $.03 and $.055 /minute;[8]

- On April 24, 2001 AT&T submitted Proposed Conseco Offer;[9]

- On April 30, 2001 Teleplus obtained an offer sheet from AT&T that substantially mirrored the same or similar terms entered into by Conseco on or about September 11, 2001;[10]

- On 05/03/01 Teleplus presented a counter offer to AT&T attempting to get the MARC set at $23 million/year for three years;[11]

- On July 1, 2001 Teleplus presented a counter offer to AT&T capping the MARC at $77 million for three years;[12] and

- On July 10, 2001 Teleplus obtained an offer sheet from AT&T revising the July 1, 2001 terms sheet, setting the MARC back to $85 million over three years, with an annual MARC of $25 million.[13]

---

[6] Sandberg Decl. at Ex. D (AT&T letter dated 03/23/01 from Humes to Hansen, T0070-73).

[7] Sandberg Decl. Ex. E (Francis Depo. Ex. 206, collection of e-mail messages between Carlisle, Maybin, Breakey and Sanderson).

[8] Sandberg Decl. at Ex. F (Francis Depo. Ex. 204, E-mail dated 04/25/01 transmitting revised minutes of 04/23/01 negotiation meeting).

[9] Sandberg Decl. at Ex. G (Francis Depo. at T. 212); Ex. H (Francis Depo. Ex. 217 E-mail dated 04/24/01 from Andres to Gaynor).

[10] Sandberg Decl. at Ex. I (Francis Depo. Ex. 208, E-mail transmitting Conseco Deal Construct dated 4/30/01).

[11] Sandberg Decl. at Ex. J (Francis Depo. Ex. 211, Teleplus counter offer dated 05/03/01).

[12] Sandberg Decl. at Ex. K (Francis Depo. Exs. 215 and 216, Teleplus counter offer to AT&T, dated 07/01/01).

[13] Sandberg Decl. at Ex. L (Francis Depo. Ex. 210, E-mail originally from Ewing to Breakey attaching redlined 7/10/01 AT&T counter proposal).

Each of the offers garnered by Teleplus provided Conseco with tremendous financial benefits. Teleplus' negotiations with AT&T reduced the prices paid by Conseco for voice and data services, reduced the minimum revenue commitment, and obtained more favorable calculations of minimum usage. Moreover, by March 23, 2001, Teleplus had obtained AT&T's agreement to waive the existing short-fall owed by Conseco (some $6 Million of liability due to AT&T).[14]

Nearly two weeks prior to Conseco's entering into a contract with Teleplus, and prior to Teleplus' analysis of Conseco's extensive shortfall situation, Teleplus made a tentative projection that it could re-negotiate Conseco's telecommunications contracts within approximately eight weeks, if all things fell into place.[15] This tentative time-line projection was just that, a tentative projection, and was in no way a part of Conseco's contract. Even though Conseco negotiated changes to the Teleplus Agreement prior to executing it, Conseco never requested any language that bound Teleplus to a specified time line for its work on Conseco's behalf.[16]

As a part of the Agreement, however, Conseco made numerous revisions regarding the terms of payment to Teleplus, and capped the yearly payment at $200,000 per year, plus 2% of annual savings over $2 Million.[17] At no time did Conseco request

---

[14] Sandberg Decl. at Ex. C (Carlisle Depo. Vol I, & II, at T. 23 &167); Ex. M (Carlisle Ex. 105, at Hume E-mail dated 03/23/01).
[15] Sandberg Decl. at Ex. A (Hansen Depo. Ex. 202, E-mail dated 02/01/01 to Conseco).
[16] Sandberg Decl. at Ex. N (Hansen Depo. Ex. 204, Agreement between Teleplus and Conseco).
[17] *Id.* (Hansen Depo. Ex. 204, Agreement between Teleplus and Conseco at ¶ 2, Schedule A).

any sort of "time is of the essence" language, and nowhere within the executed Agreement between the parties did Conseco insert such a clause. Where other customers requested time protections, Teleplus has agreed to the additional contractual terms and included such language.[18]

Teleplus quickly encountered several difficulties in relation to negotiating with AT&T. In order to obtain a better negotiating position, Teleplus recommended that Conseco dismiss its present AT&T account team in Indianapolis, and move the account to Minneapolis. Initially, Conseco refused to follow Teleplus' suggestion and also refused to follow Teleplus' second recommendation that Conseco confront AT&T about its supposed 2000 "best deal" contract, based upon Teleplus discovering that Conseco had not previously received the "best deal at the time" when it entered into contracts with AT&T in April of 2000. Contrary to AT&T's assertions, of 15 contracts (including Conseco's) entered into at that time for similar sized companies, Conseco's contract was in the middle. Nine AT&T contracts had terms worse than Conseco's while five other AT&T contracts contained better terms.[19] Mr. Hansen testified that AT&T's representation that Conseco had the best terms possible at that time was not true and constituted "a fraud of inducement." But the executives higher up Conseco's chain of command were reluctant to follow Teleplus's recommendations.

---

[18] Sandberg Decl. at Ex. O (Hansen Depo. Ex. 201, ADC Contract with "time is of the essence" clause at ¶ 7).

[19] Sandberg Decl. at Ex. M (Carlisle Depo Ex. 105, E-mail dated 03/27/01 comparing 15 contracts of similarly sized companies).

As stated by Ms. Carlisle (a member of AT&T's negotiation team), there was little reason for AT&T to negotiate, because AT&T had no obligation to give Conseco a rate reduction at that time (March – April 2001).[20] That made it necessary for Conseco to consider some sort of tactic to move the negotiations out of its seeming deadlock. Finally, on June 5, 2001, and July 12, 2001, Conseco drafted a letter to AT&T that would have, if sent, demanded that the AT&T account team be fired and a new team be assigned.[21] The options obtained to date, reflected in the April 30, 2001 offer sheet remained virtually unchanged.

Unbeknownst to Teleplus, some time after July 2001, Conseco demanded that AT&T cut Teleplus out of the negotiation process and deal only with Conseco. All the while, Conseco insisted that Teleplus continue working on other contracts such as MCI and Verizon. On September 18, 2001, however, Mr. Hansen noticed the recent filing of Conseco's new tariff number 13673.[22] It was at that point that Teleplus realized that Conseco had gone ahead and entered into a contract with AT&T without Teleplus.

On or about August 31, 2001 Conseco executed a new contract with AT&T which became effective on September 11, 2001. The new contract with AT&T contained terms similar to the options presented by Teleplus and previously obtained by Teleplus as of April 30, 2001. After completing the necessary calculations required to arrive at the true

---

[20] Sandberg Decl. at Ex. C (Carlisle Depo. Vol. 1, at T. 15).
[21] Sandberg Decl. at Ex. P (Carlisle Depo. Ex. 106, unsigned letter from Breakey to Sichau, dated 06/5/01).
[22] Sandberg Decl. at Ex. Q (Breakey Depo. Ex. 218, Hansen E-mail to Conseco regarding new tariff filing); Ex. R (Francis Depo. Ex. 203, One Net SOA, including new contract rates effective 09/11/01).

cost per minute, AT&T negotiation team member, Richard Francis testified that the terms of Conseco's eventual re-negotiated contract were substantially the same as those previously obtained by Teleplus.[23]

On October 26, 2001, after receiving an invoice from Teleplus, Conseco notified Teleplus that it was to cease any further activities on behalf of Conseco.[24] Conseco also refused to pay Teleplus the agreed upon commissions, thereby breaching the contract.

At no time during the negotiations did Conseco levy any complaints with Teleplus concerning the timing of negotiations between Teleplus and AT&T. Only after Conseco entered into a contract with AT&T outside of Teleplus' involvement, and only after Teleplus initiated the present suit, did Conseco allege that Teleplus acted inappropriately and caused an unnecessary delay which allegedly caused Conseco to continue paying AT&T at higher rates longer than necessary.[25]

If there were delays, the delays that existed were not due solely to Teleplus' negotiation style or technique. The delays encountered were due primarily to Conseco's own prior contractual obligations which placed it in an extraordinarily weak bargaining position. Conseco executives also placed themselves in the lead negotiation role, thereby

---

[23] Sandberg Decl. Ex. G (Francis Depo. at T. 132-33)
[24] Sandberg Decl. Ex. S (Conseco letter from Breakey to Steen dated 10/26/01 & Teleplus Invoice to Conseco dated 10/1/01) (CONSECO 101717).
[25] It should be noted that within the telecommunications industry, it was widely known that AT&T frequently delayed negotiations, or delayed the start dates of new contracts in order to keep higher rates in place longer. See Sandberg Decl. at Ex. T (Richard A. Kuehn, *The Great Stall,* Bus. Comm. Rev., Sept. 2001) (T0194-95).

superseding Teleplus' overall control over the timing of the proceedings,[26] Conseco also refused to follow Teleplus' suggestions at an earlier stage of negotiations which further contributed to the delays encountered. According to Richard Francis, (AT&T's negotiation team member), complex contract re-negotiations like Conseco's could take "anywhere from two weeks to very close to a year."[27] In addition, AT&T's Ms. Carlisle confirmed that Conseco's agreement would not have been reached any sooner without the aggressive negotiating style of Teleplus.[28]

The presentation of any expert testimony and analysis relating to damages resulting from a "delay" is irrelevant, and unsupported by the substantial facts of the present matter. Presentation of such testimony and report would work solely to confuse the jury as to the express terms of the contract at issue, and work to muddy what is otherwise a clear breach of contract issue.

## ARGUMENT

A pretrial motion in *limine* serves to exclude irrelevant, prejudicial, or otherwise inadmissible evidence prior to trial, rather than relying on sustained objections and curative instructions at trial. The trial court has discretion to admit or exclude expert testimony. *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001). Under Federal Rule of Evidence 702, a witness is qualified to testify as an expert on the basis of the expert's knowledge, skill, experience, training or education. *See id.* Once a witness

---

[26] See Sandberg Decl. Ex. U (Collection of correspondence noting leader in AT&T contract negotiations was James Breakey, with Teleplus having more of a supporting role) (T2174-75, T0075-79, & T2105-06).
[27] Sandberg Decl. at Ex. G (Francis Depo. at T. 55).
[28] Sandberg Decl. at Ex. C (Carlisle Depo.Vol. I, at T. 50).

qualifies as an expert, the district court has the obligation to act as a "gatekeeper," screening the expert's testimony to ensure that it is not only relevant but reliable. *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

Conseco's proffered expert has no independent factual basis for the opinion he professes in his report: he was not involved in any way in **either** the negotiations between Conseco and Teleplus over the February 12, 2001 consulting agreement between the parties, **nor** the negotiations between Conseco and Teleplus concerning AT&T over rates and other terms of service for Conseco. As a result, the factual basis for his opinion was provided to him by Conseco: the assertion that Teleplus was "late" in getting Conseco signed onto a new AT&T agreement with lower prices. The failure of that asserted factual underpinning is the grounds for excluding his testimony (as well as that of any other witness concerning factually unsupported "delay" damages).

There are three fundamental and fatal errors in the asserted factual basis for Mr. Nantell's opinion:

- The assumption that Teleplus had an enforceable obligation to secure a new, lower-priced AT&T contract for Conseco at all;
- The assumption that Teleplus had an enforceable obligation to secure a new, lower-priced AT&T contract for Conseco by a specific time; and,
- The assumption that Teleplus made a negligent misrepresentation that it could secure a new, lower-priced AT&T contract for Conseco by a specific time.

**A. No Contractual Obligation Exists Requiring Teleplus To Secure A New, Lower Priced AT&T Contract For Conseco.**

The first assumption - that Teleplus had an enforceable obligation to secure a new, lower-priced AT&T contract for Conseco at all – is the starting point for Conseco's breach of contract counterclaim. Unless Teleplus had an obligation under the parties' contract to deliver a new AT&T contract with lower prices, the timing of Teleplus' work is irrelevant. An examination of the parties' agreement reveals that no such enforceable obligation was placed upon Teleplus.

The consulting agreement negotiated between the parties obliges Teleplus to do four things: to review Conseco's present telecommunications contracts and usage; using that knowledge, to review the currently available carrier pricing packages (the "contract tariffs or other options") to see what – if any – better pricing packages there might be for Conseco; if Teleplus were to find any such advantageous pricing packages, to present Teleplus' recommended contract tariffs or other options for Conseco's review; and, if Conseco decided to pursue any of those recommended contract tariffs or other options, to assist in negotiating with the carrier(s) to attempt to secure a new contract acceptable to Conseco.[29]

Nowhere in the consulting agreement does Teleplus promise that it will deliver a new carrier contract to Conseco, just as nowhere in the agreement does Conseco promise that it will accept and execute a new carrier contract. The payment term of the agreement is a double contingency: Teleplus is to be paid if (1) it finds some presently effective

---

[29] Sandberg Decl. at Ex. N (Hansen Depo. Ex. 204, Agreement between Teleplus and Conseco).

contract tariffs or other options available from carriers that reflect Conseco's needs and provides its recommendations about which of those contract tariffs or other options Conseco should pursue, and (2) within a year, Conseco enters into a new carrier agreement with pricing or other terms similar to the contract tariffs or other options that Teleplus had identified and recommended to Conseco.[30]

Under the parties' agreement, if Teleplus were unable to locate one or more contract tariffs or other options that it felt could form the basis for Conseco negotiating with a carrier for a new contract, Teleplus would simply not be paid for its time and effort in reviewing the outstanding contract tariffs or other options. Conseco would have no claim against Teleplus for damages on a theory that Teleplus "should have" found some contract tariffs or other options that met Conseco's needs.

Similarly, if Conseco were to listen to Teleplus' presentation of its recommendations about the presently outstanding contract tariffs or other options and decide it did not see enough value in proceeding to negotiations over a new carrier contract, Teleplus would have no claim for damages on a theory that Conseco "should have" moved into negotiations and signed a new carrier contract.

This is the fatal flaw in the factual starting point that Conseco provided to its expert: there was never any obligation for Teleplus to get Conseco into a new carrier contract at all, and thus no harm for failing to do so by a certain date.

---

[30] *Id.* at ¶ 2.1(i) & (ii).

**B. No Contractual Obligation Exists Requiring That Teleplus Secure A New, Lower Priced AT&T Contract Within A Specified Time Period.**

The second assumption - that Teleplus had an enforceable obligation to secure a new, lower-priced AT&T contract for Conseco by a specific time – also cannot be found anywhere in the parties' agreement. Mr. Nantell's expert report states that Conseco entered into a contract with Teleplus wherein "Teleplus committed to review Conseco's existing telecommunications service arrangements, assume responsibility for negotiations with carriers, and present recommendations to Conseco for more advantageous arrangements with carriers."[31] This statement is supported by the terms of the parties' contract. But, Mr. Nantell's report continues: "Teleplus misrepresented its capabilities with respect to negotiating beneficial contracts with certain telecommunications carriers within eight weeks of February 12, 2001.[32] Not only is this statement completely factually unsubstantiated, but nowhere within the contract between the parties was there ever any time restriction imposed.

The only reference to a possible eight-week time period occurred in two e-mails. The first (dated February 1, 2001 from Teleplus' Mr. Hansen to Conseco's Mike Sanderson), was sent <u>prior to</u> the execution of the Agreement between Teleplus and Conseco."[33] This e-mail predates the Agreement between Conseco and Teleplus by nearly two weeks.

---

[31] Sandberg Decl. at Ex. V (Nantell Expert Report, dated 08/04/03 at ¶ 11); Ex. N (Hansen Depo. Ex. 204, Agreement between Teleplus and Conseco, at ¶ 1).
[32] *See* Sandberg Decl. at Ex. V (¶ 12).
[33] Sandberg Decl. At Ex. A (Hansen Depo. Ex. 202, E-mail to Sanderson, dated 02/01/01).

As noted above in the Relevant Facts section, Hansen suggested that his projected eight-week time-line depended on "all the dominos dropping in order" and was only a tentative projection. At the time of Hansen's e-mail, Conseco had not fully informed Teleplus of the extent of its shortfall and Teleplus' extensive information gathering about Conseco's usage and bills had yet to begin.

Hansen's second e-mail (dated February 15, 2001 sent to Conseco's Michael Sanderson and Daniel Rosenbaum), laid out an "aggressive" strategy setting out a tentative schedule for completing various tasks and confirmed that Teleplus would communicate with Conseco on a daily basis.[34] Mr. Hansen further stated: "You will be in the midst of the action [negotiations] and will understand any deviation and its cause."[35]

The eight-week time period relied upon by Mr. Nantell was nothing more than a tentative strategy planning projection. The two references contained in Mr. Hansen's e-mails were not part of the eventual Agreement entered into between Teleplus and Conseco, and were never adopted by either party as a term of the contract.

Where there is no substantial factual basis upon which to base a damages analysis, such evidence and testimony is irrelevant and works only to confuse the jury. Such testimony does not aid the jury in determining whether Conseco entered into a contract

---

[34] Sandberg Decl. at Ex. B (Hansen e-mail to Sanderson and Rosenbaum, dated 02/15/01) (T0010).
[35] *Id.*

that contained substantially the same or similar options as those presented by Teleplus within the previous twelve-month time period.[36]

Plaintiff maintains that no contractual obligation can be found that requires Teleplus to secure a new, lower priced AT&T contract within a specified time period. Moreover, no record evidence exists to support the factual basis alleged by Mr. Nantell's report. Without the necessary factual underpinnings, Mr. Nantell's report and testimony is irrelevant, prejudicial, and confusing and should be excluded from the trial of this matter.

In addition, the parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when the evidence contradicts or varies the terms of the written agreement. *Material Movers v. Hill*, 316 N.W.2d 13, 17 (Minn. 1982). The only evidence which references any sort of projected time-line of eight-weeks is within Mr. Hansen's two February e-mails. One pre-dates the final written Agreement between Conseco and Teleplus, and the discussion included therein cannot be admitted for the purpose of trying to enhance or vary the terms of the existing written Agreement between the parties. The second contains only a projection and notes that deviations may occur.

The Hansen e-mails represent discussions which took place outside of the negotiations concerning the actual terms of the Agreement. The time-table articulated, if entered into evidence, would contradict the existing terms of the Agreement and would

[36] *See* Sandberg Decl. at Ex. N (Hansen Depo. Ex. 204, Agreement between Teleplus and Conseco at 2.(ii)).

suggest that additional terms should be applied to the written Agreement. Under Minnesota law, the parol evidence rule prohibits the admittance of such evidence in conjunction with the existing written Agreement between the parties. *Material Movers v. Hill, id.*

Conseco, a sophisticated business entity, revised the draft consulting agreement changing the terms of payment, but made no effort to add any terms concerning timing. Had Conseco intended to add a timing clause it had ample opportunity. During the course of Teleplus' negotiations with Conseco's various telecommunications carriers, Conseco never came to Teleplus and complained about the time the negotiations were taking or suggested that a time-line needed to be incorporated into its contract with Teleplus. On the contrary, Conseco was highly involved in the negotiation process and was keenly aware of the progress being made.[37] No complaints were ever lodged with Teleplus concerning any sort of delay in relation to Teleplus until after the filing of this lawsuit. Furthermore, an expert's testimony is considered inadmissible if it works to vary the terms a contract. *Wis. Hydro Elect. Co. v. Equitable First & M. Ins. Co.*, 233 F.2d 313, 318 (8th Cir. 1956).

Mr. Nantell's apparent reliance on the tentative time-line projection of eight weeks, is irrational, unsupported and assumes facts outside of the Agreement that simply

[37] See Sandberg Decl. at Ex. W (Correspondence demonstrating Conseco's reluctance to accept the MARC at AT&T's level of $26.1m/yr. and continued to prolong the negotiations) (T2465-67, T2311-12, T2497-99, T2485-87, T2491-96, T0163-65, & T0167-70).

do not exist, and if admitted would work to vary the actual terms of the written Agreement.

Finally, Mr. Nantell's report goes so far as to suggest unsupported conflicting facts that Conseco would have been able to negotiate new contracts at the rates achieved without substantial assistance from any outside consultants.[38] Contrary to Mr. Nantell's assertion on behalf of Conseco, AT&T's staff testified during depositions that a customer with a relatively new contract such as Conseco's, who was also in significant short-fall situation (some $6 M), was in an extremely weak negotiating position, leaving AT&T with all the leverage.[39]

No factual basis exists to support the erroneous foundational basis of Mr. Nantell's expert damages report and testimony or any other similar testimony. Plaintiff maintains that all such testimony and analyses relating to damages due to an unsupported assertion of delay should be excluded from evidence.

### C. No Contractual Obligation Exists to Support a Claim of Negligent Misrepresentation.

The third assumption - that Teleplus made a negligent misrepresentation that it could secure a new, lower-priced AT&T contract for Conseco by a specific time – also cannot be supported in the record. The only supposed "representation" which Conseco has identified is the two e-mails from William Hansen and those e-mails do not support a negligent misrepresentation claim.

---

[38] Sandberg Decl. at Ex. V (Nantell Expert Report at ¶ 12, n. 1).
[39] Sandberg Decl. at Exs. C & G (Carlisle Depo., at T. 7, 14-16; Francis Depo., at T. 230).

**1. Defendant's Expert analysis concerning damages claimed due to delay are identical.**

Damages allegedly stemming from Conseco's counterclaims for breach of contract and for negligent misrepresentation based on delay are identical. At paragraph five of Conseco's counterclaim alleging a breach of contract, Conseco alleges that Teleplus' breach of the Agreement entered into between Conseco and Teleplus, "resulted in a substantial delay in Conseco securing beneficial contracts with telecommunications carriers, [allegedly] causing material damage to Conseco in excess of $1 million." *See* Def.'s Am. Answer, Docket Number 9, Counterclaims, Count 1, at p. 7, ¶ 5, (hereinafter "Docket No. 9") (emphasis added)

At paragraph ten of Conseco's counterclaim, alleging negligent misrepresentation, Conseco states, "Conseco was substantially delayed in its ability to enter into beneficial contracts with certain telecommunications carriers, causing [allegedly] material damage to Conseco in excess of $1 million." *Id.* at p. 8, ¶ 10 (emphasis added).

"Minnesota law does not recognize an independent tort for conduct that merely constitutes a breach of contract. . . ." *Nordale, Inc. v. Samco, Inc.*, 830 F.Supp. 1263, 1271 (D. Minn. 1993) (quoting *UFE, Inc. v. Methode Elec., Inc.*, 808 F.Supp. 1407, 1410 (D. Minn. 1992) (citing *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 790 (Minn.) *cert. denied*, 424 U.S. 902 (1976))). The damages asserted in both counterclaims are based on the same conduct, an alleged delay which purportedly constitutes a breach of contract.

Conseco is attempting to benefit from "two bites of the apple" by ignoring existing caselaw and by erroneously trying to bootstrap its independent tort claim to a breach of

contract claim. The damages analysis prepared by Conseco's expert is based solely on Conseco's single claim of "delay." The re-negotiation with AT&T was allegedly not completed in a "timely manner" and that "delay" resulted in one set of damages, which can not be double counted where the independent tort claim is based on the same facts as the breach of contract claim. Not only does Nantell's damage analysis blur together damages alleged in the two counter claims, but his analysis is plainly based only on one single concept, "delay."

**2. No proof exists to support a claim of negligent misrepresentation**.

Minnesota law, in both statutory and common law actions based on fraudulent or negligent misrepresentation, requires that Conseco prove: (1) that a misrepresentation of fact was made; (2) that Conseco actually relied on the alleged misrepresentation; and (3) that any pecuniary loss was caused by justifiable reliance on the information. *Miles Equipment, Inc. v. NCI Building Systems, L.P.*, 167 F.Supp.2d 1077, 1085 (D. Minn. 2001); *Semanko v. Minnesota Mutual Life Ins.*, 168 F.Supp.2d 997, 1000 (D. Minn. 2000);[40] *see Nordale, Inc.*, 830 F.Supp. at 1270-71(citing *Bonhiver v. Graff*, 311 Minn. 111, 248 N.W.2d 291 298-299 (Minn. 1976) (adopting the Restatement (Second) of Torts definition of negligent misrepresentation)).[41]

---

[40] *See also Florenzano v. Olson*, 387 N.W.2d 168, 173 n. 3 (Minn. 1986) (negligent misrepresentation); *LensCrafter, Inc. v. Vision World, Inc.*, 943 F.Supp. 1481, 1488 (D. Minn. 1996).

[41] In *Bonhiver,* the Minnesota Supreme Court adopted the Restatement (Second) of Torts definition of negligent misrepresentation:

> (1) One who in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is

The primary basis of Conseco's counter claim of misrepresentation appears to be based on the erroneous assertion that Teleplus promised to complete its negotiations within eight weeks and that Conseco's reliance on that time-line resulted in delay and damages. *See* Docket No. 9, at Countercl. Count II, ¶ ¶ 6-10. Defendant's allegations are completely without merit. Defendant's failure to provide any kind of specific evidence necessary to support its allegations further supports the inadmissibility of Defendant's expert Timothy J. Nantell's testimony and report as well as any pre-contractual discussion of any tentative time projections.

**a. No factual basis or reliance of any misrepresentation exists.**

Teleplus never promised or guaranteed that it would complete the re-negotiation of Conseco's telecommunications carrier contracts within an eight-week period. Only a remote reference is contained, as previously described, in two e-mails. In the first, Mr. Hansen carefully states a tentative projection of eight weeks, but adds several qualifiers, such as "David's timeline is dependent on all the dominos dropping in order." He further states, the dates are "tentative" and that in order to achieve the dates "we will need team work."[42] In the second e-mail, Mr. Hansen again carefully qualifies his aggressive scheduling and suggests that Conseco "will be in the midst of the action and will

---

> subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Nordale, Inc.*, 830 F.Supp. at 1270-71 (quoting *Bonhiver*, 248 N.W.2d at 298-99 and Restatement (Second) of Torts, § 552 (1) (emphasis added)).

[42] *See* Sandberg Decl. at Ex. A (Hansen Depo. Ex. 202, Hansen e-mail to Sanderson, dated 02/01/01).

understand any deviation and its cause."[43] In other words, both Mr. Hansen's projections were speculative. The first was presented prior to the actual acceptance of Teleplus' pitch to re-negotiation Conseco's telecommunications contracts and the second (contemporaneous with the parties' agreement) was prepared to suggest an aggressive strategy laying out a listing of activities that were to be addressed.

As previously argued, the tentative nature of Mr. Hansen's two e-mails to Conseco makes them inadmissible as a term of the Agreement between Teleplus and Conseco, nor can they be introduced to broaden the terms of the written Agreement. There simply is no other evidence to support Defendant's erroneous claim of a misrepresentation of fact.

More importantly, nowhere within the flow of information back and forth between the parties during the negotiation process with Conseco's telecommunications providers was there every any discussion concerning Teleplus' inability to complete the entire negotiation process within an eight-week time period. No other references or stipulations exist anywhere within the correspondence that might even remotely imply that Conseco relied on Teleplus' tentative time projections. According to standard negotiation practices, Teleplus works with their clients, and allows the client to decide when a suitable deal has finally been reached. In this particular matter, it was entirely up to Conseco to decide if AT&T had finally offered an acceptable prices and minimum annual commitment or MARC. Teleplus looked to Conseco to let it know when that bargaining point had been reached. Interestingly, James Breakey testified that after 8 weeks,

---

[43] Sandberg Decl. at Ex. B (Hansen e-mail to Sanderson and Rosenbaum, dated 02/15/01) (T0010).

Teleplus had negotiated the significant portion of the deal, stating: "we were closest to having a meeting of the minds in April [2001] . . . ."[44]

**b. No justifiable reliance exists to support a negligent misrepresentation claim.**

Reliance is not justified when a party could easily determine the falsity of a misrepresentation. *Employers Mut. Cas. Co. v. Wendland & Ultz. Lts.*, 351 F.3d 890 (8th Cir. 2003) (finding misrepresentations were unambiguously contradicted in insurance policy language and could have been discovered by simply reading the policy). Reliance is also deemed unjustified where a disclaimer that the information at issue was not guaranteed or that the representations made were vague. *See Loop Corp. v. McLlcroy*, 2004 WL 2221619 (Minn. Ct. App. 2004) *rev. denied* (Minn. Dec. 22, 2004) (finding reliance not justifiable because appellant put on notice that allegedly false statements were only estimates and not guaranteed);[45] *Dakota Bank v. Eisland*, 645 N.W.2d 177 (Minn. Ct. App. 2002) (finding disclaimer in un-audited financial statement invalidates claim of negligent misrepresentation because no justifiable reliance); *Greuling v. Wells Fargo Home Mortgage, Inc.*, 690 N.W.2d 757(Minn. Ct. App. 2005) (finding reliance was not justifiable as a matter of law because of vagueness of promise to finance and failure to discuss any specific terms of a finance agreement). Therefore, any claim asserting negligent misrepresentation must be highly fact specific.

In the present matter, Conseco fails to support its allegation with any specific facts. Its negotiations were handled primarily by Conseco Finance executive James

---

44 Sandberg Dec. at Ex. X (Breakey Depo. Vol. II, dated 11/26/02 at T. 70).
45 Attached hereto at Sandberg Decl. Ex. Y.

Breakey. By his own testimony, Mr. Breakey is an experienced business man, one who had personally negotiated and entered into hundreds of contracts.[46] Moreover, Breakey had access to his corporate legal department and testified that all Agreements were reviewed by Conseco's legal department.[47] Conseco had ample time and opportunity to review the terms of the Agreement with Teleplus before signing it. The Agreement makes no mention of a time-line and provides no inference that the re-negotiation process will be concluded within an eight-week period. Given the level of Conseco's business sophistication, experience in drafting, negotiating and entering into contracts, any "reliance" Conseco now claims is shown to be utterly baseless and concocted after the fact in an attempt to justify its failure to pay Teleplus.

Mr. Hansen's two e-mails had exactly the sort of disclaimers needed to defeat any claim of reliance. He specifically said the suggested dates were tentative, that outside factors would drive the timeline, that teamwork between the parties was necessary to give the timeline a chance of being met, and that Conseco would be informed on a daily basis. These disclaimers served the same purpose as the disclaimers in *Loop* and *Dakota Bank*; to put Conseco on notice that it could not rely on the eight week projection as a statement of fact or promise.

In light of the above, Conseco's claim of negligent misrepresentation must fail as a matter of law. Defendant's expert testimony and report based on such erroneous claims,

---

[46] *See* Sandberg Decl. at Ex. X (Breakey Depo. Vol. I, dated 08/28/02 at T. 19, 53-54, 130)
[47] *See id.* (Breakey Depo. Vol I, at T. 128-29).

as well as any and all other similar testimony should, therefore, be deemed inadmissible at trial.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court exclude all testimony of Defendant's expert Mr. Nantell. Mr. Nantell's report and subsequent testimony erroneously assumes a factual basis existed to support Defendant's contention that it was damaged due to Teleplus' delay in obtaining re-negotiated contracts within an eight-week time period. No such terms were ever included within the written agreement between the parties. Without such evidence, Mr. Nantell's report and testimony becomes irrelevant, prejudicial and confusing to the jury and should not be admitted. Plaintiff further request that the Court exclude from evidence both the Hansen e-mails projecting a tentative schedule. The introduction of any discussions that took place prior to the execution of the Agreement is inadmissible pursuant to the parol evidence rule, and as an attempt to expand upon the terms of the written Agreement.

Finally, Plaintiff requests the exclusion of any other witnesses' testimony purporting to advance a "delay" claim.

Dated: June 20, 2005

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By: s/Christopher K. Sandberg

Christopher K. Sandberg #95485
Darla Jo Boggs #0314912
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Facsimile: 612-339-0981

**ATTORNEYS FOR PLAINTIFF TELEPLUS CONSULTING, INC.**