**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
C.H. ROBINSON WORLDWIDE, INC., Plaintiff,
v.
GHIRARDELLI CHOCOLATE COMPANY,
Defendant.
**No. Civ. 03-2978 (JRT/FL.**

July 19, 2004.

Richard J. Nygaard, Rider Bennett, Minneapolis, MN, for plaintiff.

David A. Schooler, Larson King, St. Paul, MN, for defendant.

MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION TO DISMISS

TUNHEIM, J.

***1** C.H. Robinson Worldwide, Inc., ("CHR"), a shipping and logistics company, sued Ghirardelli Chocolate Company ("Ghirardelli") alleging Ghirardelli had failed to pay for shipping services provided by CHR. Ghirardelli brought several counterclaims, and Ghirardelli also brought a separate action in California state court. The California case was removed to federal court, and transferred to the District of Minnesota, and has been consolidated with this case. CHR has moved to dismiss Ghirardelli's claims of unfair competition and fraud, as well as Ghirardelli's request for declaratory judgment. After CHR filed this motion, but before the Court heard argument, Ghirardelli filed an amended answer and counterclaim. The parties addressed the amended counterclaim in supplemental briefing. For the reasons discussed below, the Court grants CHR's motion to dismiss the unfair competition claim, and denies the motion to dismiss in all other respects.

BACKGROUND

The Court provides the following preliminary sketch of the background of this dispute. Beginning in about 1999, CHR provided warehousing, shipping and distribution services to Ghirardelli. In 2001, the parties contemplated "stepping up" their relationship, and began negotiating a contract by which CHR would provide additional services to Ghirardelli. Based initially on a bid, Ghirardelli agreed to hire CHR contingent upon the parties successfully negotiating an appropriate written contract. The negotiations proceeded for several months. Ghirardelli claims that CHR sent a final version of the contract to California in spring of 2002, and Ghirardelli executed the contract in California on May 6, 2002. Ghirardelli claims the final, executed contract was then faxed to CHR.

CHR argues that the parties negotiated, but that they never reached an agreement. CHR claims that it continued to provide services to Ghirardelli under their prior understanding, and that Ghirardelli owes CHR about $4 million for those services. CHR says that the "contract" Ghirardelli purportedly executed was really just a template that would allow the parties to continue their negotiations.

CHR claims that beginning in 2002, Ghirardelli consistently refused to pay invoices. Ghirardelli claims that CHR provided substandard service and failed to provide important services, such as vital monthly reports, and communications capabilities. Ghirardelli also claims that it detrimentally relied on CHR's representations that CHR was proceeding under the contract. For example, Ghirardelli claims that it consolidated three eastern warehouses, had CHR take on the management role of Ghirardelli's west coast provider of warehousing, and implemented a new shipping schedule and minimum order policy. (Amended Counterclaim at ¶ 11.) Ghirardelli further claims that CHR failed to carry out its obligations under the contract.

The parties ended the relationship in 2003. This lawsuit followed.

ANALYSIS

I. Standard of Review

***2** "A motion to dismiss should not be granted unless [Ghirardelli] can prove no set of facts entitling [it] to relief." Kottschade v.. City of Rochester, 319 F.3d 1038, 1040 (8th Cir.2003). For a 12(b)6) dismissal to properly lie, the complaint must reveal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

an insuperable bar to relief on its face. United States v. Aceto Agric. Chem. Corp., 872 F.2d 1373, 1376 (8th Cir.1989). The Court must accept as true, in a hypothetical sense, all of the factual claims of the complaint, and must view those facts in a light most favorable to the nonmoving party, in this case Ghirardelli. *See* Schaller Telephone Co. v. Golden Sky Systems, Inc ., 298 F.3d 736, 740 (8th Cir.2002); Anderson v. Franklin County, 192 F.3d 1125, 1131 (8th Cir.1999). In treating the factual allegations of a complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir.1990). In construing the facts, the Court shall "reject conclusory allegations of law and unwarranted inferences." Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir.1997). Finally, the Court must only consider the pleadings in determining whether the plaintiff has stated a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

II. "Unfair competition"

Ghirardelli brings a claim of "unfair competition" pursuant to California Business and Professions Code § 17200, which prohibits "unfair competition" including "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. *See also* ABC Int'l Traders, Inc. v. Matsushita Elec. Corp. of America, 931 P.2d 290 (Cal.1997). Except in cases brought by competitors alleging anticompetitive practices, business conduct need not be illegal to implicate the statute. *See* State Farm Fire & Cas. Co. v. Superior Court, 53 Cal.Rptr.2d 229 (1996) (holding that a breach of the duty of good faith and fair dealing will support an injunction under § 17200). [FN1] Rather, the "test ... is that a practice merely be unfair." Allied Grape Growers v. Bronco Wine Co., 249 Cal.Rptr. 872, 883 (1988). The statute is far-reaching, and "California courts have consistently interpreted the language of section 17200 broadly." South Bay Chevrolet v. General Motors Acceptance Corp., 85 Cal.Rptr.2d 301, 309 (Cal.Ct.App.1999).

FN1. The California Supreme Court, in *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 543-44 (Cal 1999), announced that in an action by a competitor alleging anticompetitive practices, the alleged misconduct must be "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." The *Cel-Tech* court explicitly limited its discussion to actions by competitors alleging only anticompetitive practices. "Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful' business practices or 'unfair, deceptive, untrue or misleading advertising." ' *Id.* at 544 n. 12.

The statute reaches any "business practice or act" and does not necessarily require repeated acts of misconduct. Cal. Bus. & Prof.Code § 17200; *see also* Podolsky v. First Healthcare Corp., 58 Cal.Rptr.2d 89, 102 (Cal.Ct.Ap.1996) (acknowledging previous requirement of pattern or course of injury, but noting that 1982 amendment "presumably permit[s] invocation of the UCA based on a single instance of unfair conduct").

CHR asserts that Ghirardelli's claim fails as a matter of law, because Ghirardelli has not pled (and could not prove) that any member of the public is likely to be deceived--or is impacted in anyway--by the alleged misconduct. Ghirardelli disputes the necessity of pleading that members of the public are impacted by the business practice or act at issue.

***3** Support, at least in a general sense, for each of these propositions may be found in California case law. In Allied Grape Growers v. Bronco Wine Co., 249 Cal.Rptr. 872, 884-85 (Cal.Ct.App.1988), the California Court of Appeals noted that no California case required that a "business practice" had to affect more than one victim to be actionable. The court continued, "[t]here is nothing in the word 'practice' that necessarily limits section 17200 cases to those actions involving multiple victims." *Id.* The court left the question open, however, "because [plaintiff] is a cooperative comprised of over 1,000 growers, many of whom were victims, and there was also evidence at trial that there were non-Allied victims...." *Id.*

CHR, in contrast, cites several cases for the proposition that the "public" must be impacted by the alleged business practice, and indeed, many California courts assume a public or consumer component to claims brought pursuant to § 172000. *See, e.g.,* Prata v. Superior Court, 111 Cal.Rptr.2d 296, 308 (Cal.Ct.App.2001) (noting that "[t]he only requirement is that the defendant's practice is unlawful, unfair, deceptive, untrue, or misleading.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The burden of proof is modest: the representative plaintiff must show that members of the public are likely to be deceived by the practice .") (emphasis added); South Bay Chevrolet v. General Motors Acceptance Corp., 85 Cal.Rptr.2d 301, 309 (Cal.Ct.App.1999) (noting that "Section 17200 'is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct." ') (emphasis added) (quoting *Hewlett v. Squaw Valley Ski Corp.*, 63 Cal.Rptr.2d 118 (Cal.Ct.App.1997)). Most of the cases cited by the parties involve some sort of "public" or consumer component, or contain language intimating such a component. *See, e.g., Podolsky*, 58 Cal.Rptr.2d 89 (addressing suit against nursing home operator brought by relatives of nursing home residents who had guaranteed payment to nursing homes for services provided to residents); *Schnall v. Hertz Co.*, 93 Cal.Rptr.2d 439, 456-59 (Cal.Ct.App.2000) (involving alleged fraudulent concealment of certain car rental charges in contract likely to deceive members of the public).

Although the Court recognizes that Section 17200 is intended to provide broad protection, Ghirardelli cited no case, and the Court's own research has revealed none, in which an unfair competition claim under Section 17200 was maintained by a sophisticated business entity dealing at arm's length with a business associate. Contrary to Ghirardelli's representation, Ghirardelli is not a "consumer" of CHR's services--at least as how that term is discussed in Section 17200 cases. *See, e.g., Schnall*, 93 Cal.Rptr.2d at 457-59 (discussing members of the public who rent cars as "consumers"); *Podolsky*, 58 Cal.Rptr.2d at 98-100 (discussing "unfairness" prong is intentionally broad, and noting that it is intended to prevent conduct injurious to consumer--in this case, relatives of nursing home residents). In this case, there is no indication that the interactions between CHR and Ghirardelli had any impact on the "public" or "consumers." There is no indication that this is the type of conduct the California legislature intended to reach. As such, the Court grants CHR's motion to dismiss this claim.

III. Fraud

***4** Ghirardelli also brings a cause of action pursuant to California Civil Code § 1710(a), alternatively asserts a common law fraud action under Minnesota common law. Ghirardelli suggests that CHR's promises to enter into a contractual relationship, and its statements and actions affirming the existence of the contractual relationship amount to fraud, because at the time CHR made the statements and affirmed the contract, CHR had no intention of performing. Ghirardelli claims that it relied on CHR's promises to its detriment.

California law defines "actual fraud" as "any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3) The suppression of that which is true, by one having knowledge or belief of the fact; 4) A promise made without any intention of performing it; or, 5) Any other act fitted to deceive." Cal. Civ.Code § 1710.

The elements of actionable fraud in California include a false representation, actual or implied, or concealment of matter of fact, that is material to transaction, made falsely; knowledge of falsity, or statements made with such disregard and recklessness that knowledge is inferred; intent to induce another into relying on representation; reliance by one who has right to rely; and resulting damage. *Ach v. Finkelstein*, 70 Cal.Rptr. 472, 477 (Cal.Ct.App.1968).

Minnesota law requires a party asserting a fraud claim to plead the following with specificity: "that there was a false representation regarding a past or present fact, the fact was material and susceptible of knowledge, the representer knew it was false or asserted it as his or her own knowledge without knowing whether it was true or false, the representer intended to induce the claimant to act or justify the claimant in acting, the claimant was induced to act or justified in acting in reliance on the representation, the claimant suffered damages, and the representation was the proximate cause of the damages." *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn.2000). In this case, Ghirardelli suggests that CHR made a false statement as to CHR's future intent. "Where a representation regarding a future event is alleged, as here, an additional element of proof is that the party making the representation had no intention of performing when the promise was made." *Id.*

Ghirardelli adequately has pled the elements required by both California and Minnesota law, therefore CHR is not entitled to dismissal of the fraud cause of action. [FN2]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN2. The parties did not address whether Minnesota or California law applies to this dispute. Instead, the parties agree that the laws are similar. For the purposes of this motion, the Court need not address choice of law issues, because under either State's law, Ghirardelli has adequately pled a fraud cause of action.

IV. Declaratory Judgment

The "contract" contained a paragraph titled "Freight Cost Reduction Initiative" on which Ghirardelli appears to premise its claim for declaratory judgment. The paragraph provides:

> ***5** a. It is understood by both Shipper (Ghirardelli) and CHRW that this agreement was entered into by Shipper for the purpose of reducing overall transportation costs. Therefore, based on the proposed rates supplied by CHR, the cost of transportation services provided by CHR under this agreement would yield, in 2002, a one time freight cost reduction of 10% in the freight cost per pound shipped when compared to a mutually agreed baseline of the Shipper actual costs per pound shipped in the calendar year 2001.

CHR argues that Ghirardelli has not stated a claim for declaratory judgment because the contract, even if there is one, does not provide for the requested relief as the quoted paragraph creates only an initiative, not a guaranteed 10% cost reduction. In addition, CHR argues that the "baseline" is not identified in the contract, so there will be no way to calculate the 10% savings. Ghirardelli counters that the claim should not be dismissed unless the Court concludes that Ghirardelli will be entitled to no manner of declaratory relief should it prevail at trial. Ghirardelli also argues that the "baseline" was understood by the parties, and that because CHR drafted the contract (and is the moving party in this motion to dismiss) any ambiguity should be resolved in favor of maintaining the claim.

Construing the facts in the counterclaim in the light most favorable to Ghirardelli, it appears that Ghirardelli could establish that it will be entitled to some form of declaratory relief. Ghirardelli has pled facts which would allow the Court to find the contractual language binding. CHR argues that Ghirardelli cannot be in a better position than it would have been had the contract been executed, and that is what Ghirardelli's declaratory judgment claim seeks. CHR's logic ultimately might be persuasive, but at this time, it is premature.

ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, IT IS ORDERED that plaintiff's motion to dismiss [Docket No. 32] is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's motion to dismiss the first cause of action of the amended counterclaim (for Unfair Competition) is GRANTED. This cause of action is DISMISSED WITH PREJUDICE;

2. In all other respects, Plaintiff's motion is DENIED.

2004 WL 1630873 (D.Minn.)

**Motions, Pleadings and Filings** (Back to top)

• 0:03CV02978 (Docket) (Apr. 29, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.