**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
RETEK, INC., Plaintiff,
v.
Jeffrey A. COX, Defendant.
**No. Civ.03-4345(JRT/FLN).**

Aug. 29, 2003.

Jeremy D. Sosna and Chad W. Strathman, Strathman & Sosna, Minneapolis, MN, for plaintiff.

Thomas E. Marshall and Mary L. Senkbeil, Jackson Lewis, Minneapolis, MN, for defendant.

MEMORANDUM OPINION AND ORDER

TUNHEIM, J.

*1 Plaintiff Retek, Inc. ("Retek") brought this suit against its former employee, Jeffrey Cox ("Cox") alleging breach of contract and misappropriation of trade secrets. Retek now seeks a preliminary injunction to enforce a non-compete covenant and to prevent misappropriation of secrets. Cox argues that this Court does not have personal jurisdiction over him and seeks to dismiss on that basis. Alternatively, Cox seeks to transfer venue of this case to Oklahoma. For the reasons discussed below, the Court finds that it does have jurisdiction in this matter and that venue is appropriate here. The Court will also issue a preliminary injunction.

BACKGROUND

Retek provides software and computer consulting services to major retail firms. One of Retek's competitors in this field is JDA Software Group, Inc. ("JDA"). On August 1, 2002, Cox, who had been working for JDA, agreed to take a position at Retek. As a condition of this new job, he signed a contract containing restrictive covenants (the "Agreement"). [FN1] Among these covenants was a confidentiality provision, under which Cox agreed not to disclose any proprietary information that he would receive while employed at Retek. Cox also agreed to a non-compete clause, promising that for one year after his employment at Retek, he would not:

> FN1. Cox was not bound by any non-compete agreements in his employment at JDA.

> directly or indirectly, whether as an employee, consultant, officer, director, stockholder, partner, proprietor, associate, representative, or in any other capacity whatsoever, engage in, become financially interested in, be employed by, render services to or have any business connection with any other person, corporation, firm, partnership or other entity which competes with [Retek] or any of its affiliates anywhere, in any line of business engaged in (or in which [Retek] or any of its affiliates plans to engage) by [Retek] or any of its affiliates....

(Olson Aff. Ex. F ("Agreement") ¶ 10.) The Agreement also provides that it would be governed and interpreted under Minnesota law and all disputes arising under the Agreement would be heard by courts sitting in Minnesota. (*Id.* ¶ 15.)

Cox began working for Retek on August 19, 2002. Cox divided his work time between Retek's Atlanta office and his home in Oklahoma. Cox traveled to Minnesota twice to receive job training, and he interacted with the company's Minnesota headquarters regarding administrative details of his job. During his time at Retek, Cox worked for one client. For a period of approximately two months, Retek gave Cox only one small assignment. Cox apparently had been promised that he would work at Retek as a "planner," but was not given such duties. At Retek, Cox worked in the "services group," and was responsible for providing consulting and technical services to Retek's clients. Cox, dissatisfied with his duties at Retek, notified his supervisor on July 19, 2003 that he planned to take a position at JDA. He resigned on July 21, 2003.

On July 29, 2003, Retek filed suit in this Court seeking to enjoin Cox from divulging confidential information or otherwise violating the Agreement. On August 18, 2003, Cox filed suit in Oklahoma state court seeking a declaration that the Agreement is invalid and for monetary damages. That same day, Cox responded to Retek's complaint in this Court by moving to dismiss for lack of personal jurisdiction.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B**

ANALYSIS

I. Personal Jurisdiction

***2** The Court must first determine whether it has jurisdiction to consider Retek's motion for injunctive relief. To survive Cox's motion to dismiss, Retek need only establish a prima facie case of personal jurisdiction. *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir.1994). For purposes of the prima facie showing, all facts must be viewed in the light most favorable to Retek, the nonmoving party, and all factual conflicts must be resolved in its favor. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications., Ltd.*, 89 F.3d 519, 522 (8th Cir.1996).

The parties do not dispute that if the forum selection clause in the Agreement is valid, this Court has jurisdiction over Cox. *See Dominium Austin Parters, L.L.C. v. Emerson*, 248 F.3d 720, 728 (8th Cir.2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause.") Cox argues, however, that the forum selection clause is not valid.

Forum selection clauses are generally presumed to be valid, but they will not be enforced if they are unreasonable or if they constitute contracts of adhesion. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589-90 (1991). A court should invalidate a forum-selection clause only if: (1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of adhesion; or (3) the agreement is otherwise unreasonable. *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 890 (Minn.1980); *Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 88 (Minn.Ct.App.1990). The Court finds that none of these conditions exist here.

First, the Court does not agree with Cox that this forum is "seriously inconvenient." A forum is a seriously inconvenient place for trial only if a party would be "effectively deprived of a meaningful day in court" as a result. *Hauenstein & Bermeister*, 320 N.W.2d at 890 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19 (1972)). This defense is usually not successful "because the presumption is that consideration was received at the time of contracting for the alleged inconvenience." *Id.* Here, Cox has not shown that "he would be unable to prosecute his claim if the forum selection clause was enforced" and this case remains in Minnesota. *Id.* Cox freely agreed to hear all controversies related to the Agreement in this state, and he "cannot be heard to complain about inconvenience resulting from an agreement [he] freely entered into." *Id.* (citation omitted). Therefore, the Court finds that Minnesota is not a seriously inconvenient forum.

Second, the Court finds that the Agreement is not a contract of adhesion. "By definition, an adhesion contract is drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 924 (Minn.1982). Cox asserts that the Agreement was an adhesion contract because it was presented to him in a pre-printed form and was offered on a "take it or leave it" basis. Minnesota law is clear, however, that these factors alone do not define adhesion contracts. *Hauenstein & Bermeister*, 320 N.W.2d at 891. "There must be a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation and that the services could not be obtained elsewhere." *Schlobohm*, 326 N.W.2d at 924-25 (emphasis original). Here, Cox did have bargaining power. Even though Retek's restrictive covenants were non-negotiable items, Cox did not have to take the job. Not only could he find employment elsewhere, but he already had employment that he claims to have enjoyed. [FN2] Moreover, the record shows that Cox secured a higher salary than the one pre-printed on his offer letter, demonstrating that some negotiation was possible. (*See* Olson Aff. Ex. D.) For these reasons, the Court finds that the Agreement and its forum selection clause do not constitute adhesion contracts under Minnesota law.

FN2. In his filings and at oral argument, counsel for Cox emphasized that Cox was recruited for his position at Retek, and that he enjoyed his previous position at JDA.

***3** Third, the Court finds that the forum selection clause is not otherwise unreasonable. Cox claims that the clause is unreasonable because it was obtained through fraud. Specifically, he claims that he was fraudulently induced into accepting work at Retek with the promise that he would be working as a "planner." However, Retek never assigned him such work. Cox has a "high threshold of proof" to establish his claim for fraudulent inducement. He must plead with specificity that: (1) Retek made a false representation regarding a past or present fact; (2) the fact was material and susceptible of knowledge; (3) Retek knew it was false or made the representation without knowing whether it was true or false; (4)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Retek intended to induce Cox to act or justify him in acting; (5) Cox was induced to act or justified in acting in reliance on the representation; (6) Cox suffered damages that were proximately caused by the representation. *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn.2000). Where, as here, Cox alleges that Retek made a promise about a future event, he must also show that Retek "had no intention of performing when the promise was made." *Id.*

Cox provides no evidence for his argument of fraudulent inducement. Rather, he rests on the fact that Retek apparently promised that he would do planner work, but that he was never assigned such work. Cox asserts that because he

> worked for Retek for almost a year and was never assigned one planning job reveals that Retek never intended to use Cox in that capacity. It also demonstrates that the representations made by Retek personnel who were recruiting Cox were false as to both present and future event [sic] with actual knowledge that no work existed or reckless disregard for the truth, just to induce Cox's acceptance of employment.

(Def. Br. at 13.) This argument is no more than speculation and does not support Cox's claims. The mere fact that Cox worked for Retek for ten months without being assigned any planner work does not "reveal" anything about Retek's intent. "[A] representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place.... [I]t must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made." *Mertens*, 616 N.W.2d at 747. Cox has made no such showing, and he has not satisfied the high threshold of proof required to show fraud. The Court therefore finds that the forum selection clause was not fraudulently induced.

Cox has not made any demonstration that the forum selection clause is invalid, [FN3] and the Court finds that the clause is valid and enforceable. Therefore, this Court has personal jurisdiction over Cox, and venue in Minnesota is proper. [FN4] Accordingly, Cox's motion to dismiss will be denied.

> FN3. Cox also argues that the clause is unreasonable because it contravenes the public policy of Oklahoma. *See Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 891 (Minn.1982) (holding that a forum selection agreement can be unreasonable where it contravenes "a strong public policy of the forum in which a suit is brought.") This argument is irrelevant, because pursuant to the forum selection clause, this suit is brought in Minnesota, and Cox cannot otherwise show that Oklahoma is a more appropriate venue.

> FN4. Because the forum selection clause is valid, the Court need not engage in a "minimum contacts" analysis to see whether the Court would have specific jurisdiction in the absence of the clause. *See International Shoe Corp. v. Washington*, 326 U.S. 310, 316 (1945). Nevertheless, the Court determines that it has specific jurisdiction over Cox. This is because in voluntarily negotiating and signing an employment contract with a Minnesota company, traveling to Minnesota for training, and interacting with Minnesota for all the administrative aspects of his job, Cox purposefully availed himself of the privilege of conducting activities in Minnesota. His "conduct and connection" with Minnesota are such that he should have reasonably anticipated being haled into court here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

II. Preliminary Injunction

A preliminary injunction may be granted only if the moving party can demonstrate: (1) that it will suffer irreparable harm absent the preliminary injunction; (2) a likelihood of success on the merits; 3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 n. 4 (8th Cir.1987); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco*, 811 F.2d at 418.

A. Irreparable Harm

***4** When an employee breaches a valid non-compete covenant, a court may infer that the employer will suffer irreparable harm if the violation is not enjoined. *Overholt Crop Ins. Service Co., Inc. v. Bredeson*, 437 N.W.2d 698 (Minn.Ct.App.1989); *Universal Hospital Serv., Inc. v. Hennessy*, Civ. No. 01- 2072, 2002 WL 192564 at *2 (D.Minn. Jan. 23,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002). In signing the Agreement, Cox certified that he was entering into a relationship of confidence with Retek and that he may receive proprietary and confidential information. (*See* Agreement ¶ 7.) Retek has also produced evidence, through an affidavit from Cox's supervisor, that Cox obtained sensitive proprietary information about the capabilities of Retek's products and other trade secrets. (Adams Aff. ¶ ¶ 16-18.) Although the exact nature and amount of proprietary material is an issue for trial, it is clear that if Cox uses or discloses any proprietary information in violation of the Agreement, Retek would likely suffer irreparable harm. This factor thus weighs in favor of injunction.

B. Probability of Success on the Merits

Retek is suing Cox on two grounds: breach of the Agreement and violation of the Minnesota Uniform Trade Secrets Act ("MUTSA"), Minn.Stat. § § 325C.01-.08. It is evident that Cox has breached the plain terms of the Agreement by working for a competitor within one year of his employment at Retek. Cox may later argue that the Agreement was invalid or otherwise unenforceable. However, from the information available at this stage, the Court has concluded that the Agreement is valid and enforceable, and that Retek therefore has a strong probability of succeeding on its breach of contract claim.

It is less clear whether Retek will succeed on its MUTSA claim. To prevail under MUTSA, Retek must show that: (1) the information must not be generally known or readily ascertainable; (2) the information must derive independent economic value from secrecy; and (3) Retek must have made reasonable efforts to maintain the secrecy of the item. *Lexis-Nexis v. Beer,* 41 F.Supp.2d 950, 958 (D.Minn.1999); *Wildmark v. Northrup King Co.,* 530 N.W.2d 588, 592 (Minn.Ct.App.1995). Here, it is clear that Retek possessed some confidential and secret information, but it is less clear that Retek has identified that information with enough specificity here, or whether Cox was specifically informed that information to which he was privy constituted trade secrets. *See International Business Machines Corp. v. Seagate Technology,* 941 F.Supp. 98, 100 (D.Minn.1992) (noting that a plaintiff must identify "specific trade secrets" at issue). Retek has also not provided any evidence that Cox would inevitably disclose any trade secret information. *See id* . Therefore, the Court cannot find that Retek will probably prevail on its MUTSA claim. However, this factor still weighs in favor of injunction because Retek will probably succeed on its breach of contract claim.

C. Balance of Harms

***5** The Court finds that the balance of harms here is close. Cox undoubtedly has a strong interest in pursuing his chosen field of endeavor and will be harmed if an injunction prevents him from doing so. At the same time, however, Retek will suffer irreparable harm if confidential information is disclosed that harms its competitive position in the marketplace. Therefore, the Court finds that the balance of harms favors issuing an injunction that preserves Cox's ability to work in his field, while still ensuring that the Agreement is enforced.

D. Public Policy

Although the public interest is served by enabling people to work in their chosen fields, public policy also favors upholding valid restrictive covenants. Therefore, this factor supports issuing an injunction that enforces Cox's Agreement with Retek.

E. Conclusion

The Court concludes that the *Dataphase* factors support issuing an injunction that enforces the valid Agreement between Cox and Retek. Defendant may continue to work for JDA, but the Court will issue an injunction prohibiting Cox from disclosing proprietary information as required by the Agreement, and that prohibits him from competing with Retek in any lines of business in which Retek is engaged or plans to engage during the term of the injunction.

ORDER

Based on the foregoing, all the records, files, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 6] is DENIED.

2. Plaintiff's Motion for a Preliminary Injunction [Docket No. 2] is GRANTED. A preliminary injunction is hereby entered against defendant Jeffrey A. Cox as follows:

a. Defendant is ordered to hold any Proprietary Information, as that term is defined in Paragraph No. 7 of the Employee Invention Assignment, Non-Competition and Confidentiality Agreement executed August 1, 2002, in strict confidence and trust. Defendant is enjoined from using or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disclosing any such Proprietary Information without the prior written consent of plaintiff Retek, Inc. ("Retek").

b. From the date of this Order through July 21, 2004 or further order of this Court, defendant may work for JDA Software Group, Inc. However, defendant is enjoined from: directly or indirectly, whether as an employee, consultant, officer, director, stockholder, partner, proprietor, associate, representative, or in any other capacity whatsoever, engaging in, becoming financially interested in, being employed by, rendering services to or having any business connection with any other person, corporation, firm, partnership or other entity, to the extent that any such activity competes with Retek or its affiliates in any line of business in which Retek or its affiliates are engaged, or in which Retek or any of its affiliates plan to engage prior to July 21, 2004.

3. In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, plaintiff shall post a bond with the Clerk in the amount of Fifty Thousand Dollars ($50,000) or the payment of such costs and damages as may be incurred or suffered by defendant in the event defendant is found to have been wrongfully enjoined or restrained.

2003 WL 22037709 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

- 0:03CV04345 (Docket) (Jul. 29, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.