**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
CAMEO HOMES, INC., Plaintiff,
v.
KRAUS-ANDERSON CONSTRUCTION CO. and the City of East Grand Forks, a Political Subdivision, Defendants.
**No. Civ.022894 (RHK/RLE).**

Dec. 3, 2003.

James D. Hovey, Pearson Christensen, Grand Forks, North Dakota, for Plaintiff.

Joseph G. Springer, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for Defendant Kraus-Anderson Construction Company.

Pierre N. Regnier and Joseph E. Flynn, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, Minnesota, and Stephen F. Buterin, Coleman Hull & van Vliet, Minneapolis, Minnesota, for Defendant City of East Grand Forks.

MEMORANDUM OPINION AND ORDER

KYLE, J.

Introduction

***1** This matter comes before the Court on Defendant Kraus-Anderson Construction Company's ("Kraus-Anderson") and Defendant City of East Grand Forks's ("the City") (collectively, "the Defendants") Motions For Summary Judgment. Plaintiff Cameo Homes, Inc. ("Cameo") has sued Defendants on thirteen counts [FN1] arising out of Cameo's repair and construction of four City buildings. Defendants have moved for summary judgment on all thirteen counts. For the reasons set forth below, the Court will grant Defendants' motions.

FN1. Cameo's thirteen-count Complaint alleges: (1) breach of contract, (2) defamation, (3) fraud, (4) Minnesota racketeering, (5) federal racketeering, (6) intentional interference with prospective business advantage, (7) negligent interference with prospective business advantage, (8) intentional interference with contractual relations, (9) extortion, (10) civil conspiracy, (11) negligence, (12) Davis-Bacon Act violation, and (13) punitive and exemplary damages. (Compl.¶¶ 22-85.)

Background

I. The Parties

As a result of the 1997 flood of the Red River, several City buildings were damaged and needed repair, including the East Grand Forks City Hall, Holiday Mall, Infill Building and the East Grand Forks Fire Station. (City's Mem. in Supp. at 2.) The City hired Kraus-Anderson, a Minnesota corporation with its principal place of business in Minneapolis, Minnesota, as the construction manager for the four projects. (*See* Springer Aff. Exs. A, B; Compl. ¶ 2.) The City also hired Cameo, a construction company incorporated in North Dakota with its principal place of business in Grand Forks, North Dakota, as the contractor on six project bid divisions and signed six contracts with Cameo. (Compl. ¶ 8; *see* Springer Aff. Ex. C (Cameo-City Contracts).) There are no contracts between Cameo and Kraus-Anderson. (Kraus-Anderson Mem. in Supp. at 2.)

II. The Projects

Cameo's contracts are governed by the terms and conditions as set forth in the "General Conditions of the Contract for Construction, Construction Manager--Advisor Edition" (hereinafter "General Conditions"). (City Mem. in Supp. at 7-8; *see* Buterin Aff. Ex. U (General Conditions).) The General Conditions provide that each contract is the entire and integrated agreement for that project and "supersedes prior negotiations, representations or agreements, either written or oral." (Buterin Aff. Ex. U. (§ 1.1.2).) Cameo's contracts do not include its bid. (*Id.* Ex. U (§ 1.1.1).) Cameo may amend its contracts only by a "Modification," which is a written and signed agreement such as a "Change Order." (*Id.* Ex. U (§ § 1.1.1, 1.1.2).) If Cameo has any claims against Defendants for payment of money, Cameo must first refer those claims to the architect as a condition precedent to litigation. (*Id.* Ex. U (§ 4.7.2).) Cameo's claims must be made by written notice within 21 days

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C

after the event giving rise to the claim occurs or 21 days after Cameo has notice of the claim. (*Id.* Ex. U (§ 4.7.3).)

A. City Hall Project

The City Hall suffered flood damage and its concrete footings and foundations needed repair. (Springer Aff. Ex. C.) Cameo's President, Michael E. Hart, submitted Cameo's bid for the City Hall's concrete work in a sealed envelope in the amount of $268,000.00. (Am. Hart Aff. ¶ ¶ 2-3, 6.) Prior to delivering the bid, Hart added 10%, or $26,800.00, by making a notation on the outside of the sealed envelope and signing it. (*Id.* ¶ 3.) The City accepted Cameo's bid, but told Hart that it refused to accept the additional 10%, stating that the modification was illegal under its bid instructions. (*Id.* ¶ 5; Hart Dep. Tr. 286-87; *see* Buterin Aff. Ex. V.) After some discussion with the City, Hart signed the contract "under protest" for the bid amount contained inside the envelope, which did not include the additional 10%. (Am. Hart Aff. ¶ 5; *see* Hart Dep. Tr. at 425-26; Springer Aff. Ex. C.) When Hart signed the contract, he knew that it was the City's position that the contract price was the price inside the envelope, and thought "that there was a risk" that he would not get the additional 10%. (Hart Dep. Tr. at 427.) Cameo was never paid the additional 10%.

***2** In addition, Cameo incurred uncompensated expenses on the City Hall project for overtime, fixing errors contained in Schoen Associates's ("the Architect") architectural plans and pouring exterior steps. (Am. Hart Aff. ¶ ¶ 9, 11, 13, Exs. F, J.) Cameo completed this work without Change Orders because Kraus-Anderson threatened to terminate Cameo or file a bond claim against it. (Am. Hart Aff. ¶ 21.) Despite incurring these expenses, Cameo did not provide written notice of its claims to the Architect prior to litigation. (Hart Dep. Tr. at 872-74; *see* Buterin Ex. U (§ § 4.7.2, 4.7.3).)

B. Holiday Mall Project

The Holiday Mall suffered flood damage and required demolition, repair and the construction of a new addition. Cameo submitted a sealed bid of $130,773.91 for the Holiday Mall Addition, Phase II, Division 1B project. (Am. Hart Aff. ¶ 14; Springer Aff. Ex. C.) Prior to submitting Cameo's bid, Hart again added 10%, or $13,077.39, in the same manner as the City Hall bid. (Am. Hart Aff. ¶ 14.) The City told Hart that it refused to accept the 10% increase. (*Id.* ¶ 15; Hart Dep. Tr. at 286-87; Buterin Aff. Ex. V.) Hart signed the Holiday Mall contract for the amount contained in the sealed envelope, which did not include the additional 10%. (Springer Aff. Ex. C.)

During construction, Kraus-Anderson insisted that Cameo install fire treated wood because the specifications stated that "[a]t metal studs, wood bucks shall be fire restive treated wherever a partition butts masonry, steel, or existing walls." (Am. Hart Aff. ¶ 16; Springer Aff. Exs. K, L; Buterin Aff. Ex. X.). Cameo completed this work without a Change Order because Defendants threatened to terminate Cameo or file a bond claim against it. (Am. Hart Aff. ¶ 16, Ex. M.)

The Holiday Mall's specifications also provided that Cameo's acceptance of final payment releases all claims and liability to the City:

> The acceptance by the CONTRACTOR [Cameo] of final payment shall be and shall operate as a release to the OWNER [City] of all claims and all liability to the CONTRACTOR other than claims in stated amounts as may be specifically excepted by the CONTRACTOR for all things done or furnished in connection with this WORK and for every act and neglect of the OWNER and others relating to or arising out of this WORK. Any payment, however, final or otherwise, shall not release the CONTRACTOR or his sureties from any obligations under the CONTRACT DOCUMENTS or the Performance BOND and Payment BONDS.

(Buterin Aff. Ex. J (§ 20.1).)

Upon final payment, Cameo signed a "Contractor's Affidavit of Payment of Debts and Claims," affirming that

> payment has been made in full and all obligations have otherwise been satisfied for all materials and equipment furnished, for all work, labor, and services performed, and for all known indebtedness and claims against the Contractor for damages arising in any manner in connection with the performance of the Contract ... for which the Owner or Owner's property might in any way be held responsible or encumbered.

***3** (Buterin Aff. Ex. C.) The space provided for "EXCEPTIONS" was left blank. (*See id.*) Cameo also signed a "Contractor's Affidavit of Release of Liens" acknowledging that

> [t]he undersigned hereby certifies that to the best of the undersigned's knowledge, information and belief, except as listed below, the Releases or Waivers of Lien attached hereto include the Contractor, all Subcontractors, all suppliers of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

materials and equipment, and all performers of Work, labor or services who have or may have liens or encumbrances or the right to assert liens or encumbrances against any property of the Owner arising in any manner out of the performance of the Contract....

(*Id.* Ex. G.) The space provided for "EXCEPTIONS" was also left blank. (*See id.*) Pate Bonding, Inc., Cameo's surety, also signed a "Consent of Surety to Final Payment" on the Holiday Mall project. (*Id.* Ex. N; *see id.* R, S.)

C. Infill Building Project

The Infill Building also sustained flood damage and required repairs. (Springer Aff. Ex. C.) This project had two parts: 1A and 3A. On 1A, Kraus-Anderson ordered Cameo to change some hardware that Cameo had previously installed. (Am. Hart Aff. ¶ 17.) On 3A, a delay caused Cameo to incur acceleration expenses in order to finish the project on time. (*Id.* ¶ 18, Ex. M.) Cameo has not been paid for the hardware or acceleration expenses.

The Infill Building's specifications contained an "Acceptance of Final Payment As Release" provision. (Buterin Aff. Ex. I (§ 20.1).) Upon final payment, Cameo signed the "Contractor's Affidavit of Payment of Debts and Claims" and "Contractor's Affidavit of Release of Liens." (*Id.* Exs. A, B, E, F.) No "EXCEPTIONS" were noted. (*See id.*) Cameo's surety signed the "Consent of Surety To Final Payment" regarding the Infill Building projects. (*Id.* Exs. L, M; *see id.* Exs. P, Q.)

D. East Grand Forks Fire Station Project

Cameo also entered into a contract to repair the City's Fire Station. (Springer Aff. Ex. C.) The Fire Station's specifications contained the "Acceptance of Final Payment As Release" provision. (Buterin Aff. Ex. K.) Cameo signed the "Affidavit of Payment of Debts and Claims" (*id.* Ex. D), the "Contractor's Affidavit of Release of Liens" (*id.* Ex. H) and its surety signed the "Consent of Surety to Final Payment" (*id.* Ex. O; *see* Ex. T).

III. Negative Comments About Cameo

Cameo alleges that after it completed its work, Defendants made negative comments about Cameo to local business owners, contractors, financial institutions and government entities. (Am. Hart Aff. ¶ 23; *see* Pl.'s Mem. in Opp'n to City at 11.) These negative comments included allegations that Cameo failed to satisfy contract conditions, failed to pay subcontractors on time, did not possess the requisite skills and that Cameo was dishonest. (Cameo Mem. in Opp'n to City at 12.) Cameo alleges that it was not awarded future projects because of these negative comments. (Am. Hart Aff. ¶ 22.)

Standard of Review

***4** A party is entitled to summary judgment if the evidence demonstrates that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In viewing the evidence, the Court makes its inferences in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996); *see also Adkinson v. G.D. Searle & Co.,* 971 F.2d 132, 134 (8th Cir.1992). The burden is on the moving party, *Enterprise Bank,* 92 F.3d at 747; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), and summary judgment should be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986). The nonmoving party, however, may not rest upon the allegations or denials of its pleadings. Rather, the nonmovant must establish the existence of specific facts that create a genuine issue for trial. Neither mere allegations nor denials are sufficient. *Id.* In essence, the court performs a threshold inquiry to determine whether there is need for trial. *Id.*

Analysis

Cameo has waived or withdrawn several claims initially contained in its Complaint. [FN2] Therefore, the summary judgment motions with respect to Cameo's remaining claims are now before the Court: breach of contract, defamation, fraud, intentional interference with prospective business advantage, intentional interference with contractual relations, civil conspiracy, negligence, and a Davis-Bacon Act violation. (Compl.¶ ¶ 22-85.) The Court will address each of Cameo's remaining claims in turn.

FN2. Cameo has not responded to Kraus-Anderson's Motion as to Counts 1, 4, 5, 7 and 9 (*see* Kraus-Anderson's Reply Mem. in Supp. at 1 n. 1), and the Court will dismiss them as waived, *Graham v. Rosemount, Inc.,* 40 F.Supp.2d 1093, 1101 (D.Minn.1999). Count 13 against Kraus-Anderson has been withdrawn. Cameo has not responded to the City's Motion as to Counts 4, 5, 7, 8, 9, and 13 (*see* City's Reply Mem. in Supp. at 1), and the Court will dismiss them as waived, *Graham,* 40 F.Supp.2d at 1101. Therefore,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the remaining claims against Kraus-Anderson are Counts 2, 3, 6, 8, 10, 11 and 12, and the remaining claims against the City are Counts 1, 2, 3, 6, 10, 11, and 12.

I. Count I--Breach of Contract (City)

A. City Hall Project

The City has moved for summary judgment on Cameo's claim for the 10% it attempted to add to its City Hall bid. The General Conditions specify that Cameo's contract represents the entire and integrated agreement and does not include its bid. (Buterin Aff. Ex. U. (§ § 1.1 .1, 1.1.2).) Hart admits that he signed the City Hall contract for the amount contained inside the sealed bid, $268,000.00, which did not include the 10% he attempted to add. (Hart Dep. Tr. at 425-26; *see* Springer Aff. Ex. C.) Although Hart signed the contract "under protest," the contract is clear and unambiguous--it does not include the additional 10%. As such, "there is nothing left for [the] Court to do but to find a judgment." *Watkins Prods., Inc. v.. Butterfield,* 144 N.W.2d 56, 58 (Minn.1966) (internal quotation omitted). Therefore, the Court will grant the City's motion with regard to the 10% bid increase.

The City has also moved for summary judgement on Cameo's other City Hall breach of contract claims (i.e. unpaid overtime hours, tearing out and re-pouring concrete and pouring steps) because Cameo failed to submit these claims to the Architect. (City's Mem. in Supp. at 7.) The General Conditions to Cameo's contract provide that any claims Cameo had for payment of money "shall be referred initially to the Architect for action" and that the Architect's decision "shall be required as a condition precedent to ... litigation...." (Buterin Aff. Ex. U (§ 4.7.2).) Additionally, the General Conditions require that Cameo's claims must be made by written notice within 21 days after the event or after Cameo has notice of its claims. (*Id.* Ex. U (§ 4.7.3).) The Minnesota Supreme Court has held that "conditions of this type are valid and for the protection of the party for whom the work is done. A notice provision of this type is designed to inform a party of delay and afford it an opportunity to eliminate the cause of the delay." *Buchman Plumbing Co., Inc. v. Regents of the Univ. of Minnesota,* 215 N.W.2d 479, 486 (Minn.1974) (citations omitted). Here, the parties were free to contract as to the type of notice that was required. *Id.* Cameo, however, did not provide written notice to the Architect for any claims, which is a condition precedent to Cameo's action. (*See* Hart Dep. Tr. at 872-74; Buterin Aff. Ex. U (§ § 4.7.2, 4.7.3).) Accordingly, the City is entitled to summary judgment on these claims.

B. Holiday Mall, Infill Building and Fire Station Projects

***5** The City has moved for summary judgment on Cameo's breach of contract claims for the Holiday Mall (i.e. the additional 10% and fire treated wood), Infill Building (i.e. hardware and acceleration expenses) and Fire Station projects. The specifications for each project provide that Cameo's acceptance of final payment releases all claims and liability to the City. (Buterin Aff. Exs. I, J, K.) On May, 16, 2000, Cameo, and its surety, acknowledged final payment for each project and did so without noting any exceptions. (*Id.* Exs. A-H, L-T.) Cameo's argument that it accepted these payments "under protest" lack support, as each release contained a space for "EXCEPTIONS" that Cameo left blank. (*See id.*) By accepting final payment for these projects without noting any exceptions, Cameo released its claims to the City. As the Minnesota Supreme Court has observed:

> It is established law in Minnesota that a lien waiver must be based upon a consideration.... It can generally be said that a materialman who receives payment in exchange for a signed waiver has received a sufficient consideration to support a waiver of all lien rights accruing from the work for which payment was received.

*Sussel Co. v. First Fed. Sav. & Loan Ass'n of St. Paul,* 232 N.W.2d 88, 90 (Minn.1975) (citations and footnotes omitted). In addition, Cameo never provided written notice of these claims to the Architect, which is a condition precedent to Cameo's action. (*See* Hart Dep. Tr. at 872-74; Buterin Aff. Ex. U (§ § 4.7.2, 4.7.3)); *Buchman,* 215 N.W.2d at 486. Accordingly, the City is entitled to summary judgment on these breach of contract claims.

II. Count II--Defamation (Kraus-Anderson and City)

Defendants have moved for summary judgment on Cameo's defamation claims. "Minnesota law has generally required that in defamation suits, the defamatory matter be set out verbatim." *Moreno v. Crookston Times Printing Co.,* 610 N.W.2d 321, 326 (Minn.2000) (citing *Am. Book. Co. v. Kingdom Pub. Co.,* 73 N.W. 1089, 1090 (Minn.1898)). To establish defamation, "the specific words complained of must be set forth, as well as who made the statement, to whom it was made, and where." *Burns v. City of Minneapolis,* Civ. No. 00-577 (ADM/AJB), 2001 WL 1589619, at *3 (D.Minn. Dec. 11, 2001) (internal

quotations and citation omitted).

Defendants assert that summary judgment is appropriate because Cameo has not identified the defamatory language that Defendants allegedly used. (City's Mem. in Supp. at 9-10; Kraus-Anderson Reply Mem. in Supp. at 2.) Cameo responds that it was defamed when Defendants made negative comments about Cameo to local businesses, contractors, financial institutions and government entities. (Cameo Mem. in Opp'n to City at 11-12; Am. Hart. Aff. ¶ 23.) These negative comments included allegations that Cameo failed to satisfy contract conditions, failed to pay subcontractors on time, did not possess the requisite skills and that Cameo was dishonest. (Cameo Mem. in Opp'n to City at 12.) Cameo admits, however, that it "does not know the words of defamation uttered by [the City] verbatim." (*Id.*)

***6** The Court will grant Defendants' motion on Cameo's defamation claims because Cameo has not provided the defamatory language or anything approaching the specificity required. Cameo admits that it "does not know the words of defamation uttered by the City verbatim" (Pl.'s Mem. in Opp'n to City at 12), and makes only non-specific references to statements allegedly made by an unnamed Kraus-Anderson representative (Compl. ¶ ¶ 27-33; Am. Hart Aff. ¶ ¶ 23, 24). Cameo's allegations are insufficient because they fail to state "who made the statement, to whom it was made, and where." *Burns,* Civ. No. 00-577 (ADM/AJB), 2001 WL 1589619, at *3; *see Moreno,* 610 N.W.2d at 326; *Am. Book Co.,* 73 N.W at 1090; *Pinto v. Internationale Set. Inc.,* 650 F.Supp. 306, 309 (D.Minn.1986). Accordingly, the Court will grant Defendants' motions on the defamation claims.

III. Count III--Fraud (Kraus-Anderson and City)

Defendants have moved for summary judgment on Cameo's existing fraud claims. [FN3] Under Fed.R.Civ.P. 9(b), the circumstances constituting fraud must be "stated with particularity," meaning that the Complaint "must identify who, what, where, when, and how." *United States ex rel. Costner v. United States,* 317 F.3d 883, 888 (8th Cir.2003) (citation omitted). In order to establish fraud, a plaintiff must show

> FN3. Cameo has not responded to Defendants' motions as to its fraud claim at paragraph 41(f) of its Complaint. (*See* Compl. ¶ 41(f); Pl.'s Mem. in Opp'n to City 14-15; Pl.'s Mem. in Opp'n to Kraus-Anderson at 9-10.) Therefore, the Court will dismiss it as waived. *Graham,* 40 F.Supp.2d at 1101.

> that there was a false representation regarding a past or present fact, the fact was material and susceptible of knowledge, the representer knew it was false or asserted it as his or her own knowledge without knowing whether it was true or false, the representer intended to induce the claimant to act or justify the claimant in acting, the claimant was induced to act or justified in acting in reliance on the representation, the claimant suffered damages, and the representation was the proximate cause of the damages.

*Martens v. Minnesota Mining & Mfg. Co.,* 616 N.W.2d 732, 747 (Minn.2000) (citations omitted). In addition, "[w]here a representation regarding a *future event* is alleged ... an additional element of proof is that the party making the representation had no intention of performing when the promise was made." *Id.* (emphasis added).

The City asserts that Cameo's fraud claims lack particularity and fail to attribute any specific statements to it. The City also asserts that Cameo cannot show that the City had no intention of performing any alleged representations regarding future events. (City Mem. in Supp. at 18; City Reply Mem. in Supp. at 3.) Similarly, Kraus-Anderson argues Cameo cannot show that Kraus-Anderson made any false statements or that Kraus-Anderson had no intention of performing any alleged representations regarding future events. (Kraus-Anderson Mem. in Supp. at 7-11; Kraus-Anderson Reply Mem. in Supp. at 3- 4.) Cameo responds that it has adequately shown that Kraus-Anderson, as the City's agent, committed several acts of fraud. (*See* Compl. ¶ 41; Pl.'s Mem. in Opp'n to Kraus-Anderson at 10.) The Court will begin by examining Cameo's fraud claim regarding installation of fire treated wood.

***7** First, Cameo alleges that Kraus-Anderson committed fraud when it demanded that Cameo install fire treated wood at the Holiday Mall but did not compensate Cameo for the installation. (Compl.41(a).) This claim fails because Cameo cannot show a false representation. The Holiday Mall's specifications specifically state that "[a]t metal studs, wood bucks *shall be fire restive treated* wherever a partition butts masonry, steel, or existing walls." (Springer Aff. Ex. K (emphasis added).) Based upon the specification, Kraus-Anderson

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

informed Cameo that installation of fire treated wood was required under Cameo's contract. (*Id.* Ex. L.) As such, Cameo cannot show that Kraus-Anderson made any false representations. *See* Martens, 616 N.W.2d at 747.

Second, Cameo alleges that Kraus-Anderson committed fraud when its employee, Lee Hauble, made false measurements on the City Hall, which caused Cameo to incur expenses for tearing out and re-pouring concrete. (Compl.¶ 41(b).) This claim fails because Cameo cannot show that Hauble "knew it was false or asserted it as his ... own knowledge without knowing whether it was true or false." *Martens,* 616 N.W.2d at 747. Hauble's allegedly incorrect measurements were, at most, a mistake and not fraud.

Third, Cameo alleges that Kraus-Anderson committed fraud when Kraus-Anderson: told Cameo to use poly or granular fill for the City Hall project but did not compensate Cameo for it (Compl.¶ 41(c)); asserted that Cameo was responsible for the architectural plan's errors (*id.* ¶ 41(d)); and demanded Cameo undertake additional work (*id.* ¶ 41(h)). These fraud claims fail because Cameo merely makes generalized allegations as to what "Defendants" may have said and does not identify who from Kraus-Anderson made these alleged representations. (*See* Compl. ¶ 41(c), (d), (h)); Fed.R.Civ.P. 9(b); *Costner,* 317 F.3d at 888 (stating that fraud allegations in the complaint "must identify who, what, where, when, and how").

Finally, Cameo alleges that Kraus-Anderson committed fraud when Kraus-Anderson: told Cameo that it would settle cost disputes (*id.* ¶ 41(e)); told Cameo that Change Orders were forthcoming (*id.* ¶ 41(g)); ordered Cameo to pour steps at the City Hall but did not compensate Cameo for its work (Pl.'s Mem. in Opp'n to Kraus-Anderson at 10); and ordered Cameo to change hardware on the Infill Building but did not compensate Cameo for the changes (*id.*). Each of these fraud claims fails because Cameo cannot show that Defendants had no intention of performing when these representations were allegedly made. "It is a well-settled rule that a representation ... as to future acts is not a sufficient basis to support an action for fraud merely because the represented act ... did not take place." *Martens,* 616 N.W.2d at 747 (citation and internal quotations omitted). Here, Cameo has shown nothing more than a representation as to future acts that did not take place.

***8** Accordingly, the Court will grant Defendants' motions for summary judgment on each of Cameo's fraud claims.

IV. Count VI--Intentional Interference With Prospective Business Advantage (Kraus-Anderson and City)

Defendants have moved for summary judgment on Cameo's claim for intentional interference with prospective business advantage or relation. "Interference with prospective business relations arises when one intentionally and improperly interferes with another's prospective business relation by inducing a third person not to enter into or continue the prospective relation or preventing the other from continuing the prospective relation." *Kassuelke v. Alliant Techsystems, Inc.,* No. C3-02-745, 2002 WL 31749172, at *4 (Minn.Ct.App. Dec. 10, 2002) (unpublished opinion) (citing *Hough Transit, Ltd. v. Nat'l Farmer's Org.,* 472 N.W.2d 358, 361 (Minn.Ct.App.1991); *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 632-33 (Minn.1982)).

Defendants contend they are entitled to summary judgment because Cameo cannot show that they intentionally or improperly interfered with Cameo's prospective business advantage. (City Mem. in Supp. at 20-22; Kraus-Anderson Mem. in Supp. at 20.) Cameo responds that Defendants intentionally interfered with its prospective business advantage by making negative comments about Cameo to the owners or architects of numerous projects. (Compl. ¶ 33; *see* Pl.'s Mem. in Opp'n to City at 17; Pl.'s Mem. in Opp'n to Kraus-Anderson at 12.) These negative comments allegedly induced the owners and architects not to enter into business relations with Cameo.

Cameo cannot show that Defendants intentionally or improperly interfered with its prospective business advantage. In his deposition testimony, Hart conceded that he had no information on why Cameo was not awarded *five* projects (Hart Dep. Tr. at 178 (Dakota Prairie School); *id.* at 151 (Humane Society); *id.* at 198 (Visitor Center); *id.* at 203-04 (Our Lady of Peace); *id.* at 207 (Grand Forks Historic House)), no information linking Defendants to why Cameo was not awarded *six* projects (*id.* at 164 (United Telephone); *id.* at 169- 70 (Greenbush Library); *id.* at 175 (Lewis and Clark); *id.* at 130 (Arnold Palmer Clubhouse); *id.* at 184 (Reed River); *id.* at 99 (Elmwood 4-Plex)), Cameo did not bid specified materials on *two* projects (*id.* at 118, 200-201 (University Square and Columbia South); *id.* at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

109-10 (Grand Forks Alerus Center)), and Cameo was not awarded *one* project on account of a prior dispute (*id.* at 189-95 (Samuel Church)). Regarding the Warren ADA project, Hart was told that Cameo was not awarded the project because "East Grand Forks officials ... told [the owner] that [Cameo] would never build another building in East Grand Forks...." (*Id.* at 159.) Cameo cannot show, however, whether the unnamed City official knew of and intended to interfere with the Warren ADA project. Thus, Cameo has not established any genuine issues of material fact as to whether Defendants intentionally or improperly interfered with Cameo's prospective business advantage. Accordingly, the Court will grant Defendants' motions for summary judgment.

V. Count VIII--Intentional Interference With Contractual Relations (Kraus-Anderson)

***9** Kraus-Anderson has moved for summary judgment on Cameo's claim for intentional interference with contractual relations. Kraus-Anderson contends that Cameo's contracts with its subcontrators were not breached. (Kraus-Anderson Mem. in Supp. at 21-22; *see* Kraus-Anderson Reply Mem. in Supp. at 4- 5.) Cameo's response is that Kraus-Anderson interfered with its contracts with *the City,* even though its Complaint refers only to interference with its contracts with *subcontractors.* (Pl.'s Mem. in Opp'n to Kraus-Anderson at 13-14; *see* Compl. ¶ ¶ 57-62.) Because Cameo fails to respond to Kraus-Anderson's motion with respect to interference with the subcontractors' contracts, the Court will dismiss this claim as waived. Graham, 40 F.Supp.2d at 1101. In addition, the Court will not consider Cameo's claim for interference with its contracts with the City because Cameo did not plead it in its Complaint, the time for amending has passed and Cameo has not sought leave to amend.

VI. Count X--Civil Conspiracy (Kraus-Anderson and City)

Because the Court dismisses Cameo's defamation, fraud, intentional interference with prospective business advantage and intentional interference with contractual relations claims, the Court will also dismiss Cameo's civil conspiracy claims as they were based upon conspiracies to commit these acts. (*See* Compl. ¶ 70 .)

VII. Count XI--Negligence (Kraus-Anderson and City)

Defendants have moved for summary judgment on Cameo's negligence claims. To claim negligence, a plaintiff must show that a duty was breached. *See Gradjelick v. Hance,* 646 N.W.2d 225, 233 (Minn.2002). Minnesota courts, however, do not recognize a cause of action for negligent breach of contract; thus, any duty owed to a plaintiff must arise from an obligation outside of a contract. *See Lesmeister v. Dilly,* 330 N.W.2d 95, 102 (Minn.1983); *Minnesota Forest Prods., Inc. v. Ligna Mach., Inc.,* 17 F.Supp.2d 892, 914- 15 (D.Minn.1998).

Defendants argue that any duties they owed Cameo arose out of the City-Cameo contracts. Cameo responds that Defendants were negligent in, *inter alia,* (1) not providing errorless architectural plans, (2) not verifying the placement of concrete and (3) not erecting the buildings in a reasonably good and workmanlike manner. (Pl.'s Mem. in Opp'n to City at 8-10; Pl.'s Mem. in Opp'n to Kraus-Anderson at 4-7.) The Court will examine Cameo's negligence claims in turn.

First, with respect to the errorless architectural plans, although Cameo's allegation is styled as a negligence claim, it is contractual in nature. The General Conditions to Cameo's contract provide that "the Owner shall furnish surveys describing physical characteristics ... for the site" and Cameo "shall carefully study and compare the Contract Documents" with the surveys. (Buterin Aff. Ex. U (§ § 2.2.2, 3.2.1).) These provisions show that any duties Defendants owed Cameo relating to the architectural plans arise from obligations contained in the contract. Therefore, the proper claim is breach of contract, not negligence. [FN4] *See Lesmeister,* 330 N.W.2d at 102; *Minnesota Forest Prods.,* 17 F.Supp.2d at 914-15; *see also D & A Dev. Co. v. Butler,* 357 N.W.2d 156, 158 (Minn.Ct.App.1984).

FN4. Cameo has not, however, provided written notice to the Architect for any claims relating to the architectural errors. Therefore, Cameo cannot bring a breach of contract action. (*See* Buterin Aff. Ex. U (§ § 4.7.2, 4.7.3).)

***10** Second, with respect to Kraus-Anderson's verification of concrete placements, under the General Conditions Cameo was ultimately responsible for placing the concrete. The General Conditions state that Cameo was not "relieved of obligations to perform ... either by activities or duties of [Kraus-Anderson] in their administration of the

Contract, or by tests, inspections or approvals required or performed by persons other than [Cameo]." (*Id.* Ex. U. (§ 3.3.3) .) As such, Kraus-Anderson did not owe Cameo a duty to verify the concrete placements.

Finally, with regard to erecting buildings in a reasonably good and workmanlike manner, neither Defendant had such a duty. This duty applies only to contractors (i.e.Cameo), and not to owners or construction managers. *See Arden Hills North Homes Ass'n v. Pemtom, Inc.,* 475 N.W.2d 495, 500 (Minn.Ct.App.1991), *aff'd as modified,* 505 N.W.2d 50 (Minn.1993) (stating that "a contractor has a duty, independent of the contract itself, to erect a building in a reasonably good and workmanlike manner").

Accordingly, the Court will grant Defendants' motions for summary judgment on each of Cameo's negligence claims.

VIII. Count XII--Davis-Bacon Act (Kraus-Anderson and City)

Defendants request summary judgment on Cameo's Davis-Bacon Act claim because the Act does not create a private right of action. Cameo responds that it may have a private right of action under a similar Minnesota statute, although it did not allege it in its Complaint. (Pl.'s Mem. in Opp'n to City at 19-20; *see* Compl. ¶ ¶ 78-83.) The Court will grant summary judgment on Cameo's Davis-Bacon Act claim because the Act does not provide a private right of action. *Mathiowetz Const. Co. v. Minnesota Dept. of Transp.,* Civ. No. 01-548 (DWF/AJB), 2002 WL 334394, at *3-4 (D.Minn. Feb. 27, 2002); *see Univ. Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 784 (1981). In addition, the Court will not consider Cameo's claim under the similar Minnesota statute because Cameo did not plead it in its Complaint, the time for amending has passed and Cameo has not sought leave to amend.

Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, IT IS ORDERED that Defendants' Motions For Summary Judgment (Doc. Nos. 20 & 29) are GRANTED. Plaintiff Cameo Homes, Inc.'s Complaint (Doc. No. 1) is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

2003 WL 22867640 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23335311 (Trial Motion, Memorandum and Affidavit) Memorandum of Law Opposing the City of East Grand Forks' Motion for Summary Judgment and Request for Oral Argument (Oct. 08, 2003)

• 2003 WL 23335353 (Trial Motion, Memorandum and Affidavit) Reply Brief of Kraus-Anderson Construction Co. in Support of its Motion for Summary Judgment (Oct. 08, 2003)

• 0:02CV02894 (Docket) (Aug. 12, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.